EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| DLJ Mortgage Capital, Inc.<br><br>    Recurrido<br><br>        v.<br><br>David Santiago Martínez, Diana Ortiz Borges y la Sociedad de Bienes Gananciales compuesta por ambos<br><br>    Peticionarios | Certiorari<br><br>2019 TSPR 129<br><br>202 DPR \_\_\_\_ |

Número del Caso:  CC-2017-521


Fecha: 23 de julio de 2019


Tribunal de Apelaciones:


    Región Judicial de San Juan y Guayama, Panel I



Abogado de la parte peticionaria:

    Lcdo. Francisco J. Amundaray


Abogados de la parte recurrida:

    Lcda. Maritza Candelaria Bonet
    Lcdo. Ramón A. Dapena Guerrero



Materia: Derechos Reales - La figura del retracto de crédito litigioso contemplado en el Art. 1425 del Código Civil no aplica a una cesión de un pagaré hipotecario otorgado en virtud de la Ley de Transacciones Comerciales


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

DLJ Mortgage Capital, Inc.

   Recurrido

      v.                  CC-2017-0521

David Santiago Martínez,
Diana Ortiz Borges y la
Sociedad Legal de Bienes
Gananciales compuesta
por ambos.

   Peticionarios

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 23 de julio de 2019.

En el presente caso nos corresponde resolver si procede el ejercicio de la figura de retracto de crédito litigioso contemplada en el Art. 1425 del Código Civil de Puerto Rico, *infra*, sobre una cesión de cierto instrumento negociable -- en este caso, un pagaré hipotecario -- otorgado en virtud de lo dispuesto en la Ley de Transacciones Comerciales, *infra*.

Evaluados los hechos del presente caso, así como toda la normativa que gobierna estos asuntos, resolvemos que de una lectura armoniosa de las disposiciones del Código Civil de Puerto Rico, *infra,* de la Ley del Registro Inmobiliario del Estado Libre

Asociado de Puerto Rico, *infra,* y de la Ley de Transacciones Comerciales, *infra*, se excluye la aplicación de la figura de retracto de crédito litigioso sobre cesiones de instrumentos negociables al amparo de ésta. Veamos.

I.

Los hechos que dieron margen al presente litigio no están en controversia. El 18 de septiembre de 2012, CitiMortgage, Inc. (en adelante, "CitiMortgage") presentó una demanda sobre cobro de dinero y ejecución de hipoteca, por la vía ordinaria, en contra del señor David Santiago Martínez, la señora Diana Ortiz Borges y la Sociedad Legal de Bienes Gananciales compuesta por ambos (en adelante, "el matrimonio Santiago-Ortiz"). En la misma, CitiMortgage alegó que era el actual tenedor de buena fe del pagaré hipotecario objeto de la demanda. Dicho pagaré hipotecario -- pagadero a la orden -- fue otorgado por el matrimonio Santiago-Ortiz, a favor de Doral Financial Corporation, quien hacía negocios en Puerto Rico como H.F. Mortgage Bankers, por la suma principal de $1,220,000.00 más intereses a razón de 6% anual. En garantía de dicho pagaré hipotecario, el matrimonio en cuestión otorgó una escritura para constituir una hipoteca voluntaria sobre cierto inmueble.

En su demanda, CitiMortgage adujo, además, que desde el 1 de julio de 2010 el matrimonio Santiago-Ortiz había incumplido con su obligación de realizar los pagos mensuales, según acordados. En esa dirección señaló que, a

la fecha de presentación de la mencionada demanda, el referido matrimonio le adeudaba la suma de $1,116,265.08 por concepto de principal e intereses, los intereses por mora y la suma de $122,000.00 en concepto de costas, gastos y honorarios de abogado correspondientes a dicha reclamación judicial. Por último, CitiMortgage argumentó que luego de varios intentos infructuosos por cobrar lo adeudado declaró líquida, vencida y exigible la referida deuda. Así las cosas, reclamaba el pago de la totalidad de la misma.

Por su parte, el matrimonio Santiago-Ortiz en su *Contestación a la Demanda* reconoció que en el 2005 otorgó un pagaré hipotecario, pero que desconocía los detalles del mismo por falta de información. Asimismo, adujo que el incumplimiento con la obligación por éstos contraída se debió al incumplimiento de parte de CitiMortgage.

Posteriormente, y tras varios incidentes procesales no necesarios aquí pormenorizar, el 11 de marzo de 2016 el matrimonio Santiago-Ortiz presentó ante el Tribunal de Primera Instancia una *Moción en solicitud de información para ejercer el retracto de crédito litigioso y notificación de ejercicio de derecho*. En dicho escrito, éstos le informaron al foro primario que CitiMortgage había cedido o planificaba ceder su interés en el préstamo en controversia, por lo que solicitaban al Tribunal de Primera Instancia que ordenara al banco confirmar la cesión de crédito. Añadieron que, de ser así, ejercerían su derecho a retracto de crédito litigioso. Examinada la referida

solicitud, y por considerarla prematura, el foro primario declaró no ha lugar la misma.

Así las cosas, el 5 de mayo de 2016 DLJ Mortgage Capital, Inc. (en adelante, "DLJ Mortgage") presentó ante el Tribunal de Primera Instancia una *Moción informativa de sustitución de parte*, en la que informó que adquirió el pagaré hipotecario en cuestión en el trámite ordinario de sus negocios mediante endoso en blanco, por lo que solicitaba se le incluyera como parte demandante. Acompañó la moción con una copia del pagaré hipotecario.

Examinada la referida moción, el foro primario emitió una *Resolución* en la cual declaró ha lugar el pedido de sustitución de parte y le concedió quince (15) días a DLJ Mortgage para que se expresara sobre la solicitud de retracto de crédito litigioso presentada por el matrimonio Santiago-Ortiz. La referida *Resolución* fue oportunamente notificada a todas las partes en el pleito.

Por su parte, el matrimonio Santiago-Ortiz presentó ante el Tribunal de Primera Instancia una *Moción informativa y en solicitud de información para ejercer el retracto de crédito litigioso y notificación de ejercicio de derecho.* En dicho escrito, éstos solicitaron a DLJ Mortgage el monto pagado por el crédito y la fecha en que ocurrió la transacción. Señalaron que, una vez DLJ Mortgage proveyera esa información, éstos estarían en posición de ejercer su derecho de retracto de crédito litigioso.

Días más tarde, DLJ Mortgage -- en cumplimiento con lo ordenado -- presentó ante el foro primario una *Moción en*

*oposición a la solicitud para ejercer el retracto del crédito litigioso.* En la referida moción, ésta esbozó cuatro (4) argumentos por los cuales, a su juicio, no procedía el retracto de crédito litigioso.

En primer lugar, DLJ Mortgage alegó que, de haber un derecho a ejercer el retracto de crédito litigioso, el matrimonio Santiago-Ortiz reclamó el mismo fuera de término. Ello pues, el 11 de abril de 2016 éstos le cursaron un requerimiento de pago a los referidos esposos mediante la notificación *Validation of Debt Notice*, por lo que en dicha fecha comenzó a transcurrir el término de nueve (9) días que éstos últimos tenían para ejercer el retracto de crédito litigioso. En consecuencia, la reclamación del derecho de retracto hecha por el matrimonio Santiago-Ortiz el 16 de mayo de 2016 -- treinta y cinco (35) días después de enviada la notificación -- fue, en su opinión, realizada fuera de término.

En segundo lugar, DLJ Mortgage adujo que el crédito reclamado en el presente pleito no se había convertido en litigioso pues el matrimonio no controvirtió la existencia del mismo. En particular, DLJ Mortgage planteó que para que un crédito se torne en litigioso no bastaba con la contestación de la demanda, sino que conforme a lo dispuesto por este Tribunal en *Consejo de Titulares v. C.R.U.V.*, *infra*, era necesario que la reclamación judicial -- al momento de la venta del mismo -- girase sobre la existencia de éste. Así pues, la ausencia de argumentos por parte del matrimonio Santiago-Ortiz sobre la existencia del

crédito en cuestión y la admisión de éstos sobre su incumplimiento con la obligación, hacían incontrovertible su validez. Consecuentemente, el crédito no era de carácter litigioso.

En tercer lugar, DLJ Mortgage señaló que la figura de retracto del crédito litigioso no aplicaba a ventas a granel de inventarios de créditos. Ello, pues el objeto del contrato de compraventa no fue el crédito en controversia sino la totalidad del inventario de créditos y el Art. 1425 del Código Civil, *infra*, regula la cesión de un solo crédito litigioso. Añadió que dicho artículo fue creado en tiempos pasados para impedir el lucro por medio de la especulación mediante la venta de créditos. No obstante, en el presente la especulación es un elemento esencial para el progreso y la función de las instituciones financieras.

**Por último, DLJ Mortgage adujo que las disposiciones del Código Civil relacionadas al retracto de crédito litigioso son inaplicables al caso de autos, pues la Ley de Transacciones Comerciales,** *infra*, **excluye la aplicación de esta figura jurídica sobre cesiones de instrumentos negociables otorgados al amparo de la misma.**

En respuesta a dichos planteamientos, el matrimonio Santiago-Ortiz presentó una *Réplica a moción en oposición a la solicitud para ejercer el retracto de crédito litigioso*. En la misma, éstos se limitaron a alegar que DLJ Mortgage aún no le había requerido el pago de la obligación, por lo que no se había cumplido con el requisito de notificación dispuesto en el Art. 1425 del Código Civil, *infra*, y, en

consecuencia, el término de nueve (9) días para ejercer el derecho de retracto de crédito litigioso aún no había iniciado. Ello, pues DLJ Mortgage no había presentado prueba sobre el envío y el recibo de la notificación. Sobre los demás argumentos levantados por DLJ Mortgage en su *Moción en oposición a la solicitud para ejercer el retracto de crédito litigioso*, éstos nada señalaron.

Evaluados los planteamientos de ambas partes, el Tribunal de Primera Instancia denegó la solicitud para ejercer el retracto de crédito litigioso presentada por el matrimonio Santiago-Ortiz. El foro primario razonó que el referido matrimonio no interrumpió el término de nueve (9) días para ejercer el mismo.

A juicio de dicho foro, habiendo DLJ Mortgage notificado la adquisición del crédito en controversia el 11 de abril de 2016, el matrimonio Santiago-Ortiz debió ejercer su derecho en o antes de nueve (9) días después de dicha notificación, entiéndase el 20 de abril de 2016, pero lo hicieron el 16 de mayo de 2016. El Tribunal de Primera Instancia señaló, además, que la moción presentada el 11 de marzo de 2016 por el referido matrimonio no tuvo el efecto de interrumpir el término pues la misma fue presentada prematuramente, es decir, previo a la notificación de la adquisición del crédito, el 11 de abril de 2016.

Inconforme con la determinación del foro primario, el matrimonio Santiago-Ortiz recurrió al Tribunal de Apelaciones mediante recurso de *certiorari.* En su escrito, éstos arguyeron que ejercieron su derecho de retracto de

crédito litigioso en tiempo, pues nunca recibieron la notificación aludida por DLJ Mortgage. Además, señalaron que el Tribunal de Primera Instancia tomó en cuenta evidencia inadmisible -- entiéndase la notificación de la adquisición del crédito -- para concluir que el matrimonio Santiago-Ortiz no reclamó su derecho de retracto en tiempo. DLJ Mortgage, por su parte, presentó su oposición y reiteró los argumentos planteados ante el foro primario. Examinados los alegatos de ambas partes, el foro apelativo intermedio denegó expedir el mencionado recurso de *certiorari*.

Así las cosas, el matrimonio Santiago-Ortiz comparece ante nos y solicita que se revise la determinación del Tribunal de Apelaciones. En esencia, señalan que los foros inferiores erraron al resolver que éstos reclamaron tardíamente el retracto de crédito litigioso. Asimismo, impugnan nuevamente que el foro primario haya tomado en cuenta evidencia inadmisible. Oportunamente, DLJ Mortgage, bajo fundamentos similares a los expuestos ante el foro primario y el foro apelativo intermedio, presentó su alegato en oposición. El 1 de diciembre de 2017 decidimos expedir el auto de *certiorari* solicitado.

Descrito el tracto procesal del presente caso, con el beneficio de la comparecencia de ambas partes, procedemos a disponer de la controversia que nos ocupa. Como mencionamos anteriormente, la controversia ante nuestra consideración amerita que nos expresemos en torno a la figura de retracto de crédito litigioso.

Disponer de esta controversia, como ya mencionamos, requiere examinar varias disposiciones del Código Civil de Puerto Rico, *infra*, la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, *infra*, y lo dispuesto en la Ley de Transacciones Comerciales, *infra*. Veamos.

II.

A.

El **retracto de crédito litigioso** es la figura jurídica que le permite a un deudor extinguir una obligación pagando el precio que el cesionario de su crédito pagó por el mismo. Art. 1425 del Código Civil de Puerto Rico, 31 LPRA sec. 3950. Véase, *Consejo de Titulares v. C.R.U.V.*, 132 DPR 707, 726 (1993); *Martínez, Jr. v. Tribunal de Distrito y Mercury, Interventor*, 72 DPR 207, 209 (1951). Esta disposición legal tiene su origen en el Derecho Romano, específicamente en la Ley Anastasiana promulgada por el emperador Anastasio. J. Trías Monge, *El envejecimiento de los Códigos: El caso del retracto de crédito litigioso,* 64 Rev. Jur. UPR 449, 450 (1995). Véase, además, J. Sánchez García, *Breves comentarios a la cesión de créditos y la cláusula de rebus sic stantibus,* Revista de Derecho vLex, Núm. 159, pág. 2 (2017). Esta Ley limitaba los efectos de la cesión de créditos. Posteriormente, el emperador Justiniano por razones humanitarias amplió esta figura para impedir la práctica "de hacer acopio por compradores profesionales de pleitos de créditos mal garantidos, los que se adquirían a bajísimo precio con el propósito de

hostigar y perseguir implacablemente a los deudores (*personas litigatorum vexationibus afficere*) y hacer grandes ganancias". Trías Monge, *supra,* pág. 450.

Eventualmente, la figura del retracto de crédito litigioso se incorporó al Código Francés y luego al Código Civil Español con el propósito de: (1) proteger a los deudores "contra el hostigamiento desproporcionado e implacable de compradores profesionales de pleitos", es decir, protegerlos de la especulación de compradores de créditos; y (2) "poner pronto fin a los litigios". Trías Monge, *supra*, pág. 452. Véase, además, C. Senés Montilla, *Tratamiento procesal de la cesión del crédito litigioso en el proceso de ejecución* en *El proceso civil ante el reto de un nuevo panorama socioeconómico*, G. García Rostán & J. Siguenza López dirs., Thomson Reuters Aranzadi, Navarra, 2017, págs. 304-327.

El Art. 1425 del Código Civil de Puerto Rico, *supra*, copia *ad verbatim* del Art. 1535 del Código Civil Español[1] regula la figura de retracto de crédito litigioso y establece lo siguiente:

> **Vendiéndose un crédito litigioso, el deudor tendrá derecho a extinguirlo, reembolsando al cesionario el precio que pagó, las costas que se**

---

[1] El Art. 1535 del Código Civil español establece:

> Vendiéndose un crédito litigioso, el deudor tendrá derecho a extinguirlo, reembolsando al cesionario el precio que pagó, las costas que se le hubiesen ocasionado y los intereses del precio desde el día en que éste fue satisfecho.
>
> Se tendrá por litigioso un crédito desde que se conteste a la demanda relativa al mismo.
>
> El deudor podrá usar de su derecho dentro de nueve días, contados desde que el cesionario le reclame el pago.

**le hubiesen ocasionado y los intereses del precio desde el día en que éste fue satisfecho.**

Se tendrá por litigioso un crédito desde que se conteste a la demanda relativa al mismo.

El deudor podrá usar de su derecho dentro de nueve (9) días, contados desde que el cesionario le reclame el pago. 31 LRPRA sec. 3950. (Énfasis suplido).

Conforme a lo anterior, para que pueda invocarse el Art. 1425 del Código Civil se requiere lo siguiente: primero, la existencia de un crédito que se encuentre en litigio (el crédito litigioso) y segundo, que éste haya sido cedido. Una vez se dan esas dos condiciones, nace el derecho a exigir su retracto, para lo cual el deudor tiene el plazo de caducidad de nueve (9) días, contados desde que el cesionario le reclama el pago. Véase, J. L. Navarro Pérez, *El retracto de créditos litigiosos,* Ed. Comares, 1989, pág. 89; G. García Cantero, *Comentarios al Código Civil y Compilaciones Forales*, Tomo XIX, EDERSA, 1980, pág. 701.

La venta o cesión debe darse a un precio o contraprestación cierta. Navarro Pérez, *op cit.*, pág. 96. Finalmente, esta venta debe concluir en la transferencia del crédito a favor de una tercera persona, distinta al deudor. *Íd.* Véase, también, Trías Monge, *supra,* pág. 453. Ello, pone en posición al cesionario o nuevo adquiriente de reclamarle al deudor la extinción de la obligación. Trías Monge, *supra,* pág. 453.

De otro lado, un crédito se considera litigioso desde la contestación a la demanda. Art. 1425 del Código Civil de Puerto Rico, *supra*. Véanse, *Consejo de Titulares v. C.R.U.V.*, *supra*, pág. 726; *Comerciantes Mayoristas v. Andon,* 83 DPR 374 (1961). Sin embargo, como hemos expresado en ocasiones anteriores, "[n]o basta la interposición de la demanda, sino que debe trabarse la *litis* con la contestación del demandado para que se conceptúe como crédito litigioso". *Consejo de Titulares v. C.R.U.V.*, *supra,* pág. 726. Véase, además, *Martínez, Jr. v. Tribunal de Distrito, supra*, pág. 209.

Es decir, "[e]s condición esencial para que un crédito se repute litigioso, la de que la contienda judicial pendiente a la fecha de la venta o cesión del crédito gire sobre la **existencia** del mismo crédito no meramente sobre las consecuencias de su existencia, una vez determinado por sentencia firme". *Consejo de Titulares v. C.R.U.V., supra,* pág. 712. (Énfasis suplido). Véase, además, Navarro Pérez, *op cit.,* pág. 99. A todas luces, aquí no está en controversia la existencia, legitimidad o validez de la deuda.

Expuesto lo anterior, respecto a la figura de retracto de crédito litigioso, conviene señalar también que el propio Código Civil limita su aplicabilidad. Así, el Art. 1417a del Código Civil de Puerto, 31 LPRA sec. 3942a establece que en el contexto de la cesión de una cosa litigiosa, el retracto de crédito litigioso "**no es**

**aplicable a la cesión de un documento negociable, traspasado de buena fe, y por valor recibido, antes de su vencimiento**. (Énfasis suplido). Es decir, que cuando la cesión de cosa litigiosa trate de un instrumento negociable serán inaplicables las disposiciones sobre la figura de retracto de crédito litigioso.

Además, el Art. 1427 del Código Civil de Puerto Rico, 31 LPRA sec. 3961, dispone como sigue: "Todo lo dispuesto en esta parte se entiende con sujeción a lo que respecto de bienes inmuebles se determine en la Ley Hipotecaria". Con lo cual, el Código nos remite al régimen registral inmobiliario cuando la cesión del crédito litigioso involucre un bien inmueble.

Pasemos entonces a ver qué nos dice la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado.

III.

A.

La Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Ley Núm. 210-2015, según enmendada, 30 LPRA 4001 *et seq.*, dispone en su Art. 91 lo siguiente: "Cuando una hipoteca se constituya para garantizar instrumentos negociables o títulos transferibles por endoso o al portador, **el derecho hipotecario se entenderá transferido con el instrumento, sin necesidad de dar conocimiento de ello al deudor, ni de**

**hacerse constar la transferencia en el Registro**". 30 LPRA sec. 6118. (Énfasis suplido).

Por otro lado, el Art. 96 de la referida ley dispone en su segundo párrafo: "En todo caso de procedimiento de ejecución de hipoteca se demandará al titular inscrito. En los casos de ejecución de hipotecas que garantizan instrumentos negociables, **deberá darse cumplimiento a las disposiciones de la legislación mercantil vigente relativas al cobro de tales instrumentos**". 30 LPRA sec. 6133. (Énfasis suplido).

Ambas disposiciones dejan claro que el tratamiento que se le deba dar a una hipoteca que se constituye para garantizar instrumentos negociables o títulos transferibles por endoso o al portador, es distinto al pagaré y la hipoteca regulada por el Código Civil. Ello es necesario debido a la negociabilidad de esos instrumentos en el tráfico comercial. De ahí que la propia Ley del Registro de la Propiedad Inmobiliaria, *supra*, a su vez, ordene se cumpla con la legislación mercantil vigente para el cobro de tales instrumentos. Dicho de otro modo, en controversias como la cual está ante nuestra consideración le es aplicable la Ley de Transacciones Comerciales, *infra.*

B.

La Ley Núm. 208-1995, conocida como la Ley de Transacciones Comerciales, según enmendada, 19 LPRA sec. 401 *et seq.*, se adoptó con la finalidad de simplificar,

clarificar y modernizar el derecho que rige las transacciones comerciales, uniformar el derecho entre las diversas jurisdicciones existentes y permitir la continua expansión de las prácticas comerciales. Sec. 1-102 de la LTC, 19 LPRA sec. 401. *Cruz Consulting v. El Legado, et al.,* 191 DPR 499, 508 (2014); *COSSEC v. González López,* 179 DPR 793, 802 (2010). Así, Puerto Rico se adaptó a la celeridad del tráfico moderno y a las tendencias del Siglo XXI en aspectos de transacciones bancarias y comerciales. Véase, Exposición de la Ley de Transacciones Comerciales, Ley Núm. 208-1995, *supra,* 1995 (Parte I) Leyes de Puerto Rico 1012.

Dicha Ley, en su Capítulo 2, recoge todo lo relacionado a la cesión de instrumentos negociables. Véase, Sec. 2-203 de la LTC, 19 LPRA sec. 553. **Un instrumento negociable, según definido por la mencionada disposición legal, es "una promesa incondicional de pagar una suma de dinero, pagaderos a la presentación o en fecha determinada, que no contiene ninguna otra promesa u orden".** Sec. 2-102 de la LTC, 19 LPRA sec. 504(a).

**Un pagaré hipotecario es una promesa, es decir, "un compromiso escrito de dinero suscrito por la persona que se obliga a pagar".** Sec. 2-103(a)(9) de la LTC, 19 LPRA sec. 503(a)(9). Ahora bien, el simple reconocimiento de la obligación no constituye un pagaré a menos que el deudor se comprometa a pagar la misma. *Íd*.

Sobre lo que constituye una cesión de un instrumento negociable, el mencionado Capítulo 2 de la Ley de

Transacciones Comerciales, *supra*, establece que ésta ocurre "cuando se entrega por una persona que no sea su emisor con el propósito de darle a la persona que lo recibe el derecho a exigir el cumplimiento del instrumento". Sec. 2-203 de la LTC, *supra*. "Sea esta una negociación o no, confiere al cesionario cualquier derecho del cedente a exigir el cumplimiento del instrumento, incluyendo cualquier derecho que tuviese como tenedor de buena fe ...". *Id.*

**A modo persuasivo**, conviene mencionar que en virtud de la Ley Núm. 21-2012, 2012 (Parte I) Leyes de Puerto Rico 273, al Capítulo 9 de la Ley de Transacciones Comerciales se le incorporó el Artículo 9 del Código Uniforme de Comercio de Estados Unidos sobre transacciones garantizadas.[2] Conforme a este Capítulo, una transacción garantizada ocurre cuando el tenedor de un instrumento negociable lo da en garantía de pago de otra transacción en la cual éste es el deudor. *Des. Caribe v. Ven-Lour Enterprises, supra*, pág. 301.

Luego de las referidas enmiendas, el Capítulo 9 de la Ley de Transacciones Comerciales, al presente, regula lo relacionado a la **venta o transferencias de pagos intangibles y pagarés**. Sec. 9-109(a)(3) de la LTC, 19 LPRA

---

[2] Este Capítulo fue enmendado en 2012 por la Asamblea Legislativa para que Puerto Rico se mantenga a la vanguardia en asuntos relacionados a adelantos comerciales y tener leyes comerciales lo más uniformes posible para facilitar la expansión económica y el crecimiento comercial. Véase, Exposición de motivos de la Ley Núm. 21-2012, 2012 (Parte I) Leyes de Puerto Rico 273.

sec. 2219(a)(3).[3] Los pagos intangibles son instrumentos tanto negociables como no negociables "bajo el cual la obligación principal del deudor de la cuenta es una obligación pecuniaria". Sec. 9-102(a) de la LTC, 19 LPRA sec. 2212(a)(61).

**Así, pues, la venta o transmisión de los pagarés hipotecarios constituye una transacción al amparo del Capítulo 9 de la Ley de Transacciones Comerciales, según enmendada, *supra*.** Ello, aunque el referido Capítulo excluye las transacciones sobre bienes inmuebles de la aplicación del mismo, pues "el mero hecho de estar garantizado por una hipoteca no derrota el carácter mueble de un pagaré hipotecario". *Des. Caribe v. Ven-Lour Enterprises*, *supra*, pág. 306. Véase, además, *Dávila v. Registrador,* 59 DPR 130, 134 (1941).

**Es menester señalar que dicha Ley expresamente establece que las disposiciones de su Capítulo 9 no serán**

---

[3] En particular, la Sección 9-109(a) de la Ley de Transacciones Comerciales establece:

  (a) Alcance general del capítulo- Salvo por lo dispuesto en los incisos (c) y (d) de esta sección, este capítulo aplicará a:

  (1) Una transacción, independientemente de su forma, que crea por medio de un contrato una garantía mobiliaria sobre propiedad mueble o inmueble por su destino;

  (2) un gravamen agrícola;

  **(3) una venta de cuentas, papel financiero, pago intangible, o pagarés;**

  (4) una consignación;

  (5) [Reservado.], y

  (6) una garantía mobiliaria que surja bajo la sec. 860 de este título, ó la sec. 1237 de este título. 19 LPRA sec. 2219.

**de aplicación a la cesión de cuentas, papel financiero, pagos intangibles o pagarés <u>para propósitos de cobro solamente</u>.** Sec. 9-109 de la LTC, 19 LPRA sec. 2219. En este contexto, la cesión a la que se refiere es una asignación del instrumento a un agente de cobro, quien no tiene la titularidad del mismo, para que cobre al deudor. 11 Part I Anderson U.C.C. sec. 9-109:25 [Rev], 3d. ed., 2018.[4] El agente de crédito no tiene un interés asegurado, por lo que le es inaplicable el Capítulo 9 de la Ley de Transacciones Negociables. Véase, *ImagePoint, Inc. v. JPMorgan Chase Bank, Nat. Ass'n*, 27 F. Supp. 3d 494, 504 (S.D.N.Y. 2014); *Filer, Inc. v. Staples, Inc.*, 766 F. Supp. 2d 314, 317 (D. Mass. 2011). Véase, además, *Texas Dev. Co. v. Exxon Mobil Corp.*, 119 S.W.3d 875, 883 (Tex. App. 2003); *In re C.W. Min. Co.*, 509 B.R. 378, 386 (Bankr. D. Utah 2014).

De otra parte, en la Sección 9-109(d)(11) de la Ley de Transacciones Comerciales, *supra*, se establece que el Capítulo 9 de la misma Ley es inaplicable en un contexto de "creación o transferencia de un **interés** en o **gravamen** sobre propiedad inmueble, incluyendo un arrendamiento o las rentas que surjan de dicho arrendamiento",[5] toda vez

---

[4] Anderson explica: "Revised Article 9 does not apply to accounts, chattel paper, payment intangibles, or promissory notes that are assigned for the purpose of the assignee collecting the receivable for the assignor". 11 Part I Anderson U.C.C. Sec. 9-109:25 [Rev], 3d. ed., 2018.

[5] En su totalidad la Sección 9-109(d)(11) de la Ley de Transacciones Comerciales establece lo siguiente:

(11) la creación o transferencia de un interés en o gravamen sobre propiedad inmueble, incluyendo un arrendamiento o las

que el instrumento negociable objeto de análisis no crea semejante interés o gravamen, aunque muy bien haya sido garantizado por uno. Como mencionamos anteriormente, se trata aquí de una promesa incondicional de pago que cumple con todos los requisitos de un instrumento negociable y por consiguiente está regulado por la Sección 2-103(a)(9) de la Ley de Transacciones Comerciales, *supra.*

## C.

Finalmente, cabe señalar que la Sección 9-102 de la Ley de Transacciones Comerciales, 19 LPRA sec. 2002 (ed. 2005), vigente al momento de los hechos del presente caso, establecía que las disposiciones del Código Civil relacionadas a la "transmisión de créditos no aplicarán a las transacciones regidas por las secs. 401 *et seq.* de este título". **En consecuencia, a toda transacción que esté bajo el alcance de la Ley de Transacciones Comerciales previo a las enmiendas de la Ley Núm. 21-2012, como la de esta controversia, no le serán aplicables las disposiciones del Código Civil relacionadas a la cesión de**

---

rentas que surjan de dicho arrendamiento, excepto en la medida que dicha disposición se haga para:

(A) Gravámenes sobre propiedad inmueble en las secs. 2233 y 2258 de este título;

(B) bienes inmuebles por su destino en la sec. 2284 de este título;

(C) registros de bienes inmuebles por su destino en las secs. 2321, 2322, 2332, 2336, y 2339 de este título, y

(D) acuerdos de garantía mobiliaria que cubren propiedad mueble e inmueble en la sec. 2264 de este título. Sec. 9-109(d)(11) de la LTC, *supra.*

**créditos. Ello incluye, claro está, la cesión de créditos litigiosos y, en consecuencia, el retracto de los mismos.**

De la misma forma, y a modo persuasivo, la Ley Núm. 21-2012 en la Sección 9-109 del Capítulo 9 contempla que lo dispuesto por el Código Civil relacionado a la "transmisión de créditos no aplicarán a las transacciones regidas por este capítulo". 19 LPRA sec. 2219(e).

Sobre lo dispuesto en la Ley de Transacciones Comerciales, la Asamblea Legislativa de Puerto Rico dejó claro que "a menos que sean desplazados por disposiciones particulares de [la misma ley], los principios generales del derecho en nuestra jurisdicción aplicarán de modo supletorio". Sec. 1-103 de la LTC, 19 LPRA sec. 402. Cónsono con lo anterior, este Tribunal ha expresado en diversas ocasiones que aun cuando las disposiciones del Código Civil pudieran aplicar a una controversia particular que también esté regulada bajo la Ley de Transacciones Comerciales, éste sólo aplicará de manera supletoria, por lo que esta ley especial prevalecerá sobre el Código Civil. *Des. Caribe v. Ven-Lour Enterprises*, *supra*; *Cruz Consulting v. El Legado et al.*, *supra*; *COSSEC v. González López, supra*, pág. 820.

Es, precisamente, a la luz de la normativa antes expuesta que procedemos a disponer del caso que nos ocupa.

IV.

En el presente caso, los señores Santiago-Ortiz otorgaron un pagaré hipotecario y una escritura para constituir una hipoteca en garantía a dicho pagaré.

CitiMortgage presentó una demanda reclamando el cobro de la totalidad de la deuda y la ejecución de la hipoteca, pero posteriormente cedió el crédito a favor de DLJ Mortgage. Enterados de la cesión del crédito, los esposos reclaman que procede su derecho de retracto de crédito litigioso. No les asiste la razón.

Primeramente, el propio Código Civil, al regular la cesión de una cosa litigiosa en su Art.1417a, *supra*, aclara la inaplicabilidad de éste cuando se refiere "a la cesión de un documento negociable, traspasado de buena fe, y por valor recibido, antes de su vencimiento".

Además, en el Art. 1427 del Código Civil de Puerto Rico, *supra*, se aclara que las disposiciones sobre la cesión de créditos "se entiende[n] con sujeción a lo que respecto de bienes inmuebles se determine en la Ley Hipotecaria". Y esta a su vez nos recuerda que cuando una hipoteca se constituya para garantizar instrumentos negociables o títulos transferibles por endoso o al portador, **el derecho hipotecario se entenderá transferido con el instrumento**. Art. 91 de la Ley Núm. 210-2015, *supra*. Por su parte, el Art. 98 de la misma ley a su vez, nos informa que en los casos de ejecución de hipotecas que garantizan instrumentos negociables **deberá darse cumplimiento a las disposiciones de la Ley de Transacciones Comerciales.**

Como ha quedado claramente demostrado, La Ley de Transacciones Comerciales hace inaplicable las

disposiciones del Código Civil sobre cesiones de instrumentos negociables otorgados al amparo de ésta.

Toda vez que el caso ante nuestra consideración se trata sobre la cesión o venta de un instrumento negociable -- entiéndase, un **pagaré hipotecario** -- es de aplicación aquí la Ley de Transacciones Comerciales, *supra*.

Resuelto que es inaplicable la figura del retracto de crédito litigioso al caso de marras, no hay que entrar a discutir los demás señalamientos de error presentados ante esta Curia.

V.

Por todo lo anterior, aunque por fundamentos distintos, se confirma la *Resolución* emitida por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos a tenor con lo aquí resuelto.

Se dictará Sentencia de conformidad.

Ángel Colón Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

DLJ Mortgage Capital, Inc.

   Recurrido

       v.

CC-2017-0521

David Santiago Martínez,
Diana Ortiz Borges y la
Sociedad Legal de Bienes
Gananciales compuesta
por ambos.

   Peticionarios

SENTENCIA

En San Juan, Puerto Rico a 23 de julio de 2019.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se confirma la *Resolución* emitida por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos a tenor con lo aquí resuelto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió una Opinión de Conformidad a la cual se unen los Jueces Asociados señores Martínez Torres y Rivera García. La Jueza Asociada señora Pabón Charneco emitió una Opinión Concurrente. La Jueza Presidenta Oronoz Rodríguez emitió una Opinión Disidente a la cual se une el Juez Asociado señor Kolthoff Caraballo. El Juez Asociado señor Kolthoff Caraballo emitió una Opinión Disidente a la cual se unen la Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Estrella Martínez.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| DLJ Mortgage Capital, Inc. | | |
|---|---|---|
| Recurrido | | |
| v. | **Núm.** CC-2017-0521 | |
| David Santiago Martínez, Diana Ortiz Borges y la Sociedad Legal de Bienes Gananciales compuesta por ambos | | |
| Peticionarios | | |

Opinión de conformidad emitida por la Juez Asociada señora Rodríguez Rodríguez a la que se unen los Jueces Asociados señor Martínez Torres y señor Rivera García

En San Juan, Puerto Rico, a 23 de julio de 2019.

Estoy conforme con la Opinión que hoy dicta este Tribunal por considerarla ejemplar en su abordaje de un tema de actualidad, a saber: la aplicabilidad del derecho al retracto de crédito litigioso. Suscribo esta Opinión para abundar sobre algunos aspectos de política pública que explican la importancia y corrección del dictamen que hoy se emite.

## I.

Como todos conocemos, Puerto Rico vive una profunda crisis económica hace varios lustros.[6] Una de las consecuencias naturales de las dificultades que viven las familias puertorriqueñas es la morosidad en el pago de sus préstamos hipotecarios. Ello provoca que las instituciones bancarias recurran -tal vez con mayor ahínco- a la venta masiva de carteras de créditos

---

[6] Melba Acosta Febo, *La reestructuración de la deuda como respuesta a la crisis fiscal de Puerto Rico y la recuperación luego del huracán María*, 87 REV. JUR. UPR 821 (2018); Marinés Aponte, *Tendencias en el Crédito Hipotecario Residencial en Puerto Rico 1995-2011: Banca Comercial, Banca Hipotecaria y Cooperativas de Ahorro y Crédito*, Informe Final: Acervo de investigaciones académicas sobre temas financieros de actualidad – UPR, (FAE, 2012); Efrén Rivera Ramos, *Crisis económica, Democracia y Derechos: El caso de Puerto Rico,* Yale Law School Latin American Legal Studies (2017), https://law.yale.edu/system/files/area/center/kamel/sela17_rivera_cv_sp.pdf.

hipotecarios como mecanismo para aliviar sus balances fiscales.[7] Esa venta masiva de créditos morosos, a su vez, ha redundando en un aumento significativo en los procedimientos judiciales de ejecuciones de hipotecas y estos litigios inundan las salas de nuestros tribunales.

En reacción a esta realidad histórica se ha redescubierto una figura de antaño de nuestro Código Civil, la institución del retracto de crédito litigioso. No exageramos cuando señalamos que ésta estaba prácticamente en desuso.[8] La revitalización del derecho a retracto de crédito litigioso, que como dije es un tema presente en los tribunales de nuestro País, nos impone la obligación de abordarlo comprensivamente. Nuestra responsabilidad primaria como el más Alto Foro, es pautar la norma, pautar el Derecho. Ello nos permite encauzar el Derecho, no tan sólo para quienes litigan o consideran litigar, sino también para los foros judiciales inferiores, y las otras Ramas Gubernamentales, las cuales vienen obligadas a seguir las interpretaciones de este Tribunal. Asumimos nuestra responsabilidad en esta controversia y lo

---

[7] Sobre este particular se ha indicado que:

> En cuanto a las motivaciones que puedan tener las entidades de crédito para desprenderse de estas carteras en favor de este tipo de fondos, una de ellas tal vez pueda explicarse por el proceso de reestructuración bancaria, en el sentido de que por medio de este tipo de operaciones obtienen liquidez, expulsan de los balances activos dudosos y liberan recursos propios destinados anteriormente a provisiones para pérdidas, lo que coadyuva a una mejor posición para cumplir con los recursos de calidad de capital y las exigencias derivadas de acuerdo.

Daniel Escribano Ferrer, *La Cesión de Créditos Litigiosos*, Universidad Complutense de Madrid (2017-2018), en la pág. 12. https://eprints.ucm.es/47337/1/TFM%20%20EL%20RETRACTO%20DE%20CREDITOS%20LITIGIOSOS.pdf.

[8] Adviértase las limitadas expresiones de este Tribunal sobre dicho tema. Véase *Consejo de Titulares v. CRUV*, 132 DPR 707 (1993); *Cámara Insular v. Anandón*, 83 DPR 374 (1961); *Santana v. Quintana*, 52 DPR 749 (1938); *Olivieri v. McK Jones*, 17 DPR 1159 (1911); *Martínez v. Santiago*, 10 DPR 259 (1906).

hacemos, no tan solo a la luz de la normativa decimonónica descrita en el Código Civil, sino también considerando lo que sobre este tema manda la Ley Núm. 210 de 8 de diciembre de 2015, según enmendada, mejor conocida como la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*, 30 LPRA sec. 6001 (Ley del Registro de la Propiedad Inmobiliaria) *et seq.* y la Ley Núm. 241 de 19 de septiembre de 1996, según enmendada, mejor conocida como la *Ley de Transacciones Comerciales*, 19LPRA sec. 401 *et seq.*

La figura del retracto de crédito litigioso, tanto en Puerto Rico como en España, está llena de claroscuros.[9] Ello se debe, según se ha indicado, a su parca regulación en el Código Civil la cual "adolece de lagunas y suscita dudas sobre su aplicación práctica -especialmente en lo relativo a su ámbito de aplicación objetivo, subjetivo y temporal- que no siempre han sido resueltas por los tribunales". Antonio Moya Fernández, Encarnación Pérez-Pujazón, Eduardo Trigo Sierra, *Cesión de créditos y cuestiones prácticas de interés: Retracto de crédito litigioso y titulación*, Actualidad Jurídica Uría Méndez, 44-2016, en las págs. 48-49. Por otra parte, la doctrina mayoritaria y la jurisprudencia española reconocen que:

> [E]l retracto de crédito litigioso "s]upone, en definitiva, una restricción legal al principio de libre circulación y transmisión de los créditos, proclamado en el artículo 1112 de Código Civil", a la par que constituye un privilegio o beneficio para el deudor que exceptúa el normal desenvolvimiento de la cesión de créditos y reduce *ex lege* los derechos del acreedor cesionario. En consecuencia, y conforme al brocardo que establece que lo desfavorable debe ser restringido y lo favorable ampliado . . . el

---

[9] Véase, STS 31 octubre 2008, RJ 2008/5810.

artículo 1535 CC **debe ser interpretado de manera restrictiva**.

*Id.* (Énfasis suplido) (citas omitidas).

La preocupación sobre la libre circulación de los créditos, queda superada en nuestro ordenamiento en virtud del texto del Art. 1417a del Código Civil. Así, al regular la cesión litigiosa se aclara en este artículo que la figura es inaplicable "a la cesión de un documento negociable, traspasado de buena fe, y por valor recibido, antes de su vencimiento". 31 LPRA sec. 3942a. Este artículo se incorpora al Código Civil mediante la Ley Núm. 39 del 12 de mayo de 1980, cuando el legislador extrajo el Art. 52 del Código de Enjuiciamiento Civil de 1933 para colocarlo en el Código Civil, al concluir que éste versaba sobre un asunto sustantivo y no procesal por lo que su ubicación natural era en el Código Civil. Véase Exposición de Motivos, Ley Núm. 39-1980. Cabe destacar también, que este Art. 52 se insertó en nuestro ordenamiento en el 1904[10] a raíz de los trabajos de la Comisión Codificadora de 1900 y proviene del Código de Procedimiento Civil de Idaho de 1901, sec. 3156.[11] Véase además, Código de Procedimiento Civil de California de 1872,

---

[10] En su versión en inglés, el Art. 52 del Código de Enjuiciamiento Civil de 1904 dispone que:

> SECTION 52. In the case of an assignment of a thing in action, the action by the assignee is without prejudice to any set-off, or other defense existing at the time of, or before, notice of the assignment; **but this Section does not apply to a negotiable instrument transferred in good faith and upon good consideration, before maturity.**

Cód. Enj. PR art. 52 (1904) (derogado) (énfasis suplido).

[11] La sec. 3156 del Código de Procedimiento Civil de Idaho de 1901 lee de la siguiente manera:

> In the case of an assignment of a thing in action, the action by the assignee is without prejudice to any set-off, or other defense existing at the time of, or before, notice of the assignment; **but this Section does not apply to a negotiable instrument**

sec. 368.[12] De esta forma se introdujo en nuestro ordenamiento jurídico, por primera vez, la figura del instrumento negociable del derecho común norteamericano. Considero que este articulado sería suficiente para, de suyo, descartar la figura del retracto de crédito litigioso en este caso.

De otra parte, y como bien señala la Opinión del Tribunal, el Código Civil ordena en su Art. 1427 que todo lo relativo a la cesión de créditos "se entiende con sujeción a lo que respecto de bienes inmuebles se determine en la Ley Hipotecaria". 31 LPRA 3961. Es decir, el Código Civil respeta la legislación hipotecaria que, históricamente, le precedió. Al referirnos al ordenamiento registral inmobiliario nos topamos con el Art. 91 de la Ley del Registro de la Propiedad Inmobiliaria que claramente dispone, que cuando una hipoteca se constituya "para garantizar instrumentos negociables o títulos transferibles por endoso o al portador, el derecho hipotecario se entenderá transferido con el instrumento, **sin necesidad de dar conocimiento de ello al deudor, ni de hacerse constar la transferencia en el Registro**". 30 LPRA sec. 6118 (Énfasis suplido).

_____

**transferred in good faith and upon good consideration, before maturity.**

Cód. Proced. Civil Idaho sec. 3156 (1901) (derogado) (énfasis suplido), https://babel.hathitrust.org/cgi/pt?id=mdp.35112203961216;view=1up;seq=16

[12] La Sec. 368 del Código Civil de California de 1872 establece que:

In the case of an assignment of a thing in action, the action by the assignee is without prejudice to any set-off, or other defense existing at the time of, or before, notice of the assignment; **but this section does not apply to a negotiable promissory note or bill of exchange, transferred in good faith, and upon good consideration, before maturity**.

Cód. Civil California sec. 368 (1872) (Énfasis suplido).

Además, el Art. 96 de la Ley del Registro de la Propiedad Inmobiliaria mandata que en los casos de ejecución de hipotecas que garantizan instrumentos negociables deberá darse cumplimiento a las disposiciones de la Ley de Transacciones Comerciales. 30 LPRA sec. 6133. De esta forma se cierra el círculo de análisis sobre el modo de evaluar un reclamo de retracto de crédito litigioso cuando la garantía hipotecaria se recoge en un instrumento negociable. Parece evidente, entonces, que el análisis en conjunto de las disposiciones mencionadas lleva inexorablemente a la conclusión de que la figura decimonónica del retracto de crédito litigioso no encuentra cabida en estas circunstancias.

Se ha señalado que el Capítulo 9 de la Ley de Transacciones Comerciales excluye de su aplicación la cesión de los pagarés hipotecarios como el que está ante nuestra consideración. Baste una somera lectura de la sección de definiciones del Capítulo 9 de esta Ley para percatarnos del error de tal aseveración. Véanse por ejemplo, Secciones 102 (2) y (11) de la Ley de Transacciones Comerciales. Así, las definiciones, verbigracia, de "cuentas" o "papel financiero", no se refieren a instrumentos negociables con garantía de pago de naturaleza inmobiliaria como el pagaré ante nuestra consideración. Por el contrario, se refieren a transacciones comerciales **con garantías mobiliarias**. Esa distinción es fundamental y suficiente para rechazar este argumento.

Considero que sería un contrasentido resolver lo contrario por cuanto la esencia propia de un instrumento negociable es su negociabilidad, es decir que el instrumento sea transferible fácilmente. Al instrumento negociable, o títulos cambiarios, como se les designa en la tradición civilista, el ordenamiento jurídico **les confiere una especial habilidad para circular**. M.R. Garay Aubán, *Derecho Cambiario*, (Ed. Revista de Derecho

Puertorriqueño, 1999), en la pág. 1. En *COSSEC v. González*, 179 DPR 793 (2010), resumimos la trayectoria histórica sobre este tipo de instrumento reconociendo que "nuestra primera legislación sobre estos medios de intercambio comercial provenía del Código de Comercio español de 1889. Posteriormente, dicho código fue enmendado por la Ley Uniforme de Instrumentos Negociables de Puerto Rico, Ley Núm. 17 de 22 de abril de 1930, que se basaba en la Ley Uniforme de Instrumentos Negociables estadounidense de 1896". *Id.* en la pág. 800. Y esta legislación a su vez, estaba basaba, en el *Bill of Exchange Act* inglés de 1882, que en su momento codificó las prácticas mercantiles que venían observándose en Inglaterra desde la Edad Media. *Id.* Es evidente que, desde principios del Siglo XX el instrumento negociable en nuestro País encuentra sus raíces en el mundo jurídico angloamericano.

En *Desarrolladora Caribe* v. *VerLour Enterprises*, 198 DPR 290 (2017), enfatizamos que estos instrumentos se caracterizan por su idoneidad para el tráfico comercial. Así, resolvimos que:

> Desde el origen de la letra de cambio hasta el pagaré moderno, el valor de los instrumentos negociables yace en su liquidez, que se debe a que el comprador de un instrumento negociable solamente necesita verificar el contenido del instrumento mismo para cerciorar la autoridad del vendedor para transferirlo **sin tener que preocuparse por restricciones u obligaciones exógenas. . . . En vista de lo anterior, la negociabilidad es la característica medular de los instrumentos negociables y la fuente de su importancia para nuestras relaciones económicas**.

*Id.* en la pág. 298. (Énfasis nuestro) (citas omitidas).

Exigir que en cada ocasión que se negocie un instrumento negociable que garantice una hipoteca haya que notificar al cedido de esa transferencia para que éste decida -si el crédito está en litigio- si desea ejercer su derecho de retracto, es imponer una limitación, obligación o restricción exógena al instrumento. *Id.* Sin hablar, claro está, de las limitaciones que ello supondría al tráfico comercial de estos instrumentos, restándoles importancia y convirtiéndolos en inefectivos. Además, como ya señalamos, ello sería contrario a Derecho, habida cuenta del Art. 91 de la Ley del Registro de la Propiedad Inmobiliaria que indica específicamente que no hay que hacer tal notificación.

Conviene recordar lo que resolvimos en *Lozada Merced v. Registrador*, 100 DPR 99 (1971), citamos *in extenso*:

> Distinto a lo que ocurre con hipotecas otorgadas a favor de personas determinadas, cuya cancelación requiere el consentimiento de la persona a cuyo favor se hubiese hecho la inscripción o anotación, o sus causahabientes o representantes legítimos, hipotecas que garantizan obligaciones negociables pueden ser canceladas a instancia de las personas que hayan cobrado los créditos. Se permite esa excepción toda vez que en estos casos no tiene que surgir del Registro el nombre del acreedor hipotecario o el del cesionario del mismo, en su caso. El propósito de esta excepción al principio hipotecario de especialidad fue extender al campo del crédito territorial instrumentos del ámbito comercial que facilitarán la cesión y transferencia de créditos garantizados con bienes inmuebles. Correspondiendo a este propósito también se quiso impartir seguridad a dichas transacciones proveyendo para que la

garantía hipotecaria no se cancelará en el Registro sin que también se destruyera la negociabilidad del instrumento garantizado por la misma.

*Id.* en la pág. 104 (citas omitidas).

Y es que así debe ser porque la figura decimonónica pretende tutelar el interés individualizado del deudor cuyo crédito litigioso es cedido. Es una norma que nació "en un contexto socio-económico y jurídico ya superado". Moya Fernández *et al.*, *supra,* en la pág. pág. 50. Esa disonancia con la realidad actual ha provocado que "la figura de crédito litigioso ha[ya] ido desapareciendo de los países de nuestro entorno -como Italia y Portugal-, y solo sobrevive en Francia, algunos países de Hispanoamérica, Puerto Rico, Egipto y Filipinas. Tampoco es conocida en el derecho común inglés . . . ni en el derecho estadunidense -salvo en el estado de Luisiana". *Id.* Véase además, José Trías Monge, *El envejecimiento de los códigos: el caso del retracto de crédito litigioso*, 64 Rev. Jur. UPR 449, 455-56 (1995). No debe sorprender entonces el resultado a que hemos llegado. La interpretación que recoge la Opinión del Tribunal permite armonizar, sin empalmes, una figura propia de la tradición civilista con otra del derecho común angloamericano, tradiciones jurídicas que conviven en nuestro entorno no siempre en perfecta sintonía.

De lo anterior, resulta evidente que la figura del retracto de crédito litigioso en nuestro ordenamiento está circunscrita a la cesión de un instrumento que no sea negociable. Como correctamente se señala en la Opinión, el tratamiento que se le deba dar a la figura del crédito litigioso cuando se trata de "una hipoteca que se constituya para garantizar instrumentos negociables o títulos transferibles por endoso o al portador", es

distinto a cuando se trata de un pagaré tradicional regulado por el Código Civil.

Además de las razones antes mencionadas, hay un fundamento adicional que a mi juicio convoca el mismo resultado al que llegamos hoy, al margen del razonamiento relacionado con la naturaleza de los instrumentos negociables. Me refiero al texto del Art. 1422 del Código Civil (equivalente al Art. 1532 del Código Civil español, cuyo texto es idéntico). Este artículo dispone: "El que venda alzadamente o en globo la totalidad de ciertos derechos, rentas o productos, cumplirá con responder de la legitimidad de todo en general; pero no estará obligado al saneamiento de cada una de las partes de que se componga . . .". 31 LPRA sec. 3947. Sobre esta disposición nos dice García Goyena en su obra *Concordancia Motivos y Comentarios del Código Civil Español* (1974): "En este caso es el derecho en globo a todas las rentas el que se vende sin enumerarlas, **y no ninguna de ellas en particular**: del derecho, pues, o título en general, debe responder el vendedor, no de esta u otra renta que puede salir incierta". *Id.* en la pág. 771. (Énfasis nuestro.)

Otro tanto nos advierte el profesor Xavier O'Callahan Muñoz, por su parte, en su tratado *Código Civil Comentado y su Jurisprudencia* (8va ed., 2016), a saber:

> Se trata de la venta de universalidad, cesión de un conjunto de créditos. El acreedor que cede a otro un conjunto de créditos, como tal conjunto y aun precio global alzado, no tiene global (sic). Responde de la existencia, legitimidad y solvencia, globalmente por el conjunto, no por cada uno de ellos, individualmente. Es decir, responde del conjunto o de la mayor parte de este, no de cada crédito individual.

*Id.* en la pág. 1657. Véase, en igual sentido, Ignacio Sierra de la Cuesta, *Cometarios del Código Civil* (2000) en las págs. 510-511.

Este tipo de transmisión es de carácter no individualizado pues se venden o ceden todos los créditos en bloque. De esta forma, "no existe un precio de venta del crédito", lo que imposibilita al "deudor que pueda solicitar el derecho a retracto de créditos litigiosos". Escribano Ferrer, *supra*, en la pág. 29. El texto del artículo impide dos cosas: "[L]a primera, que se pueda exigir el precio individual de la transmisión (pues lo que se vendió fue la totalidad de la cartera, donde también se incluía, entre otros el crédito del deudor que está solicitando el retracto), y la segunda la imposibilidad de solicitar el retracto de créditos litigiosos, porque no estamos ante un supuesto regulado en el 1.535 (crédito individualizado), sino ante una venta en globo del 1.532 CC. No se cumplen los requisitos previstos para poder solicitar en su caso el retracto." *Id.* en las págs. 29-30.

Y es natural que ello sea así pues en la venta en globo o en bloque, como por ejemplo, la cartera de créditos hipotecarios, el precio que se paga es por el volumen. En venta global de créditos hipotecarios el adquirente asume el riesgo de adquirir "malos créditos" junto a los mejores. Esta venta de créditos como un "todo", es comparable con los derechos propietarios que se tienen en una comunidad de tipo germánica, indivisible, donde la cosa es íntegramente de todos, a diferencia de la comunidad romana, donde existen cuotas de participación.

Pero finalmente, ¿podemos en realidad hablar de retracto en casos de ventas a granel? Si el retracto legal consiste en "el derecho de subrogarse, **con las mismas condiciones estipuladas en el contrato**, en lugar del que adquiere una cosa por compra o dación en pago", Art. 1411 Código Civil, 31 LPRA sec. 3921 (énfasis suplido), en los casos de venta en bloque, ¿puede

el cedido colocarse en la misma posición que su cedente bajo "las mismas condiciones estipuladas en el contrato", es decir, en el contrato mediante el cual se adquiere la cartera? La respuesta me parece evidente.

**II**

Antes de concluir, considero necesario hacer unas breves expresiones en torno a la Opinión disidente emitida por entender, respetuosamente, que ésta no calibra correctamente los fundamentos del dictamen que emite el Tribunal.

Hay que recordar que un pagaré recoge como obligación principal, la obligación de pago de un deudor frente al prestamista o acreedor. La hipoteca, la garantía real, es secundaria a la obligación principal representada por el pagaré y la otorgan las partes ante un notario. La hipoteca no es otra cosa que la certeza que tiene el prestamista de que podrá cobrar su acreencia. Si el deudor no paga con su dinero se ejecuta la garantía y el deudor paga con sus bienes. Por otro lado, **la naturaleza y esencia** de un instrumento negociable **no se transmuta** cuando es negociado, sin importar cuántas veces. Y es la Ley de Transacciones Comerciales la que regula el tráfico jurídico de estos instrumentos. Siendo ello así entonces, la determinación de umbral que debe hacer este Tribunal al evaluar si aplica o no el retracto de crédito litigioso es determinar, si está frente a un instrumento negociable o no, ya que el Código Civil advierte que la figura de retracto no está disponible para la cesión de un documento negociable, traspasado de buena fe y por valor recibido.

Por otro lado, y contrario a lo que se intima en la Opinión disidente, la inaplicabilidad del derecho al retracto de crédito litigioso a los instrumentos negociables no implica que los deudores hipotecarios quedarán desprovistos de remedios y mecanismos que les permitan enfrentar adecuadamente las

vicisitudes y contrariedades que supone cualquier proceso de ejecución de hipoteca. Mucho menos nuestra determinación representa una aquiescencia a que familias puertorriqueñas "pierdan su hogar". Por el contrario, el reconocimiento del derecho al retracto en estos casos representaría devaluar sustancialmente el ya tan quebradizo mercado de préstamos hipotecarios, lo que tendría consecuencias nefastas para nuestra economía e incidiría directamente en la capacidad de miles de familias de obtener préstamos hipotecarios por parte de instituciones bancarias para financiar un hogar. Cabe destacar que, justamente en atención a la precariedad económica que deriva de la actual crisis fiscal, nuestro ordenamiento contempla múltiples protecciones para estos deudores hipotecarios, entre ellas el requisito de mediación compulsoria. Asimismo, enmiendas recientes a la legislación federal obligan a las entidades bancarias a ofrecer a los deudores hipotecarios alternativas viables para evitar ejecuciones. De hecho, las enmiendas instituidas por el *Dodd-Frank Act* al *Real Estate Settlement Procedures Act* (RESPA), imponen límites a las facultades de los acreedores al momento de manejar préstamos hipotecarios residenciales y regulan todo lo concerniente a la mitigación de pérdidas (*loss mitigation*) y los *short sales*. Estas alternativas atienden el delicado balance que existe entre los derechos de los deudores que se han visto impedidos de satisfacer sus pagos hipotecarios y los intereses de los acreedores financieros que, ante las pérdidas que representa ese incumplimiento, buscan maneras de recuperar su acreencia.

Por todo lo anterior, estoy conforme con la Opinión del Tribunal.


                                        Anabelle Rodríguez Rodríguez
                                        Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| DLJ Mortgage Capital, Inc.<br><br>    Recurrido<br><br>       v.<br><br>David Santiago Martínez,<br>Diana Ortiz Borges y la<br>Sociedad Legal de Gananciales<br>compuesta por ambos<br><br>    Peticionarios | CC-2017-0521 | *Certiorari* |

Opinión concurrente emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 23 de julio de 2019.

Concurro con el resultado al que llega hoy una Mayoría de este Tribunal. La figura del retracto de crédito litigioso dispuesta en el Artículo 1425 del Código Civil, 31 LPRA Sec. 3950, es inaplicable al caso de autos debido a que prevalece la Ley Núm. 208-1995, según enmendada, conocida como Ley de Transacciones Comerciales, 19 LPRA Sec. 401 *et seq*.

El retracto de crédito litigioso ha cumplido históricamente una función importante al proteger a los deudores de acreedores hostigadores e implacables. Por ello, todavía consta en nuestro ordenamiento jurídico. No obstante, la Asamblea Legislativa de Puerto Rico –con la clara intención de uniformar y adelantar el tráfico de instrumentos y garantías según las prácticas comerciales actuales – promulgó la Ley de Transacciones Comerciales,

*supra*, en el 1995. Tras un examen de los propósitos y las disposiciones de esta ley especial, es evidente que la figura del retracto de crédito litigioso no es compatible con las ventas de pagarés hipotecarios dentro de su ámbito de aplicación. Esto conlleva que el Artículo 1425 del Código Civil, *supra*, no aplique al caso de autos y no haya necesidad de expresarnos sobre si se cumplen con los requisitos del retracto de crédito litigioso.

I. Retracto de crédito litigioso

Nuestro ordenamiento jurídico reconoce que "[t]odos los derechos adquiridos en virtud de una obligación son transmisibles con sujeción a las leyes, si no se hubiese pactado lo contrario". Art. 1065 del Código Civil, 31 LPRA sec. 3029. Entre estos se encuentran los derechos de crédito.[13] *Consejo de Titulares v. CRUV*, 132 DPR 707, 718 (1993).

Asimismo, en cuanto al crédito litigioso –aquel crédito que no puede tener realidad sin previa sentencia firme que lo declare– hemos reconocido que este puede cederse o venderse. *Consejo de Titulares v. CRUV*, supra; *Pereira v. I.B.E.C.*, 95 DPR 28, 65 (1967); *Martínez, Jr. v. Tribunal de Distrito*, 72 DPR 207, 209 (1951). Sin embargo, el Artículo

---

[13] Sobre los criterios de transmisibilidad de créditos, así como las excepciones al principio general de la transmisibilidad de los créditos, véase *Consejo de Titulares v. CRUV*, 132 DPR 707 (1993). En *Consejo de Titulares v. CRUV*, supra, pág. 717, citando a L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial,* Madrid, Ed. Tecnos, 1979, Vol. 1, pág. 789, definimos la cesión de crédito como 'un negocio jurídico celebrado por el acreedor cedente con otra persona, cesionario, por virtud del cual aquel transmite a éste la titularidad del derecho de "crédito cedido"'.

1425 del Código Civil, *supra*, permite al deudor extinguir el crédito litigioso mediante el pago al cesionario del precio que este pagó, las costas y los intereses dentro del término de caducidad de nueve (9) días desde que el cesionario le reclame el pago.[14] *Consejo de Titulares v. CRUV*, supra. Esta disposición, conocida como retracto de crédito litigioso, tiene un largo trasfondo histórico en el Derecho Civil. Desde el derecho romano, ha tenido el objetivo de impedir el tráfico inmoral de créditos mal garantidos que fueron adquiridos por debajo de su valor por compradores profesionales de este tipo de créditos para hacer grandes ganancias mediante el hostigamiento de los deudores.[15] J. Trías Monge, *El envejecimiento de los códigos: El caso del retracto de crédito litigioso*, 64 (3) Rev. Jur. UPR 449, 450 (1995).

---

[14] El Artículo 1425 del Código Civil, 31 LPRA Sec. 3950, dispone que:

> Vendiéndose un crédito litigioso, el deudor tendrá derecho a extinguirlo, reembolsando al cesionario el precio que pagó, las costas que se le hubiesen ocasionado y los intereses del precio desde el día en que éste fue satisfecho.

> Se tendrá por litigioso un crédito desde que se conteste a la demanda relativa al mismo.

> El deudor podrá usar de su derecho dentro de nueve (9) días, contados desde que el cesionario le reclame el pago.

Debido a que la controversia ante nuestra consideración no requiere examinar si se cumplieron con los requisitos para aplicar la figura del retracto de crédito litigioso en este caso, aclaramos que el Tribunal de Primera Instancia al referirse sobre el término de caducidad expresó que la *Moción informativa y en solicitud de Información para ejercer el retracto de crédito litigioso y notificación de ejercicio de derecho* presentada el 16 de mayo de 2016 "fue prematura, según lo declaramos en su momento. Al ser un término de caducidad, el mismo no es susceptible de ser interrumpido para luego reafirmarlo, según pretenden los demandados". Resolución de 13 de enero de 2017, Apéndice de *Certiorari,* págs. 140-145.

[15] El Artículo 1425 del Código Civil de Puerto Rico, *supra*, proviene del Artículo 1535 del Código Civil español y este a su vez del Artículo 1699 del Código Napoleónico.

No obstante, actualmente nuestro Código Civil coexiste con otras normas comerciales, particularmente la Ley de Transacciones Comerciales, *supra*, que abarca negocios que históricamente eran reglamentados en el Código Civil o el Código de Comercio. A.C. Gómez Pérez, *El conflicto entre tradiciones jurídicas en el Derecho Privado comercial puertorriqueño*, 3 UPR Bus. L.J. 29 (2012); M.J. Godreau, *Notas sobre una posible revisión del Código Civil de Puerto Rico*, 32 Rev. Jur. UIPR 323 (1998). Así, la Ley de Transacciones Comerciales, *supra*, se nutre del desarrollo del Código Uniforme de Comercio en los Estados Unidos, jurisdicciones que, a excepción de Luisiana,[16] desconocen la institución del retracto de crédito litigioso y han rechazado las restricciones propias del derecho común inglés a la transferencia de créditos litigiosos. J. Trías Monge,

---

[16] El estado de Luisiana tiene una disposición similar. Así, el Artículo 2652 del Código Civil de Luisiana, LA. CC Art. 2652, reconoce el retracto de crédito litigioso (*Sale of litigious rights*). No obstante, los tribunales de Luisiana han reconocido diversas instancias de ventas de créditos litigiosos en las que no aplica el Art. 2652 ya que no cumplen con el propósito de la disposición. Véase, *Bluefields S.S. Co. v. Lala Ferreras Cangelosi S.S. Co.*, 133 La. 424 (1913); *Peoples Homestead Federal Bank and Trust v. Laing,* 637 So.2d 604 (1994)(LA App, 2 Cir.). Asimismo, el Capítulo 9 del Título 10 de las Leyes Comerciales de Luisiana limita la aplicación del Artículo 2652 del Código Civil de Luisiana, *supra*. LSA-R.S. 10:9-411. Véase, *Ring Const. LLC v. Chateau Des Lions, LLC*, 918 So.2d 1172 (2005)LA App, 3 Cir). Al respecto, se ha indicado que:

> Subsection (c) of R.S. 10:9-411 removes the creation and enforcement of security interests in litigious rights, including tort claims, from the application of Civil Code Article 2652. The policy underlying Civil Code Article 2652 is to prevent parties from trading in and attempting to profit from lawsuits. The rights of a secured party under revised Chapter 9 in a tort claim or other litigious right is limited to the secured debt otherwise incurred, and does not involve the negative consequences of independently trafficking in tort claims or other lawsuits. Comentario oficial, LSA-R.S. 10:9-411.

*supra*, pág. 458. Examinemos entonces la Ley de Transacciones Comerciales, *supra*.

II. La Ley de Transacciones Comerciales

En el 1995 la Asamblea Legislativa adoptó la Ley de Transacciones Comerciales, *supra*, con el propósito de simplificar, clarificar y modernizar el derecho cambiario puertorriqueño, uniformarlo con las legislaciones vigentes en las demás jurisdicciones estadounidenses mediante la incorporación del Código Uniforme de Comercio, y permitir la continua expansión de las prácticas comerciales.[17] Exposición de motivos de la Ley Núm. 208-1995, 1995 (Parte 1) Leyes de Puerto Rico 1013. Sec. 1-102 de la Ley 208-1995, 19 LPRA sec. 401. Véase, *Cruz Consulting v. El Legado* et al., supra, págs. 508-509; *COSSEC* et al. *v. González López* et al., 179 DPR 793, 801-802 (2010). Véase además, M.R. Garay Auban, *Derecho cambiario de Estados Unidos y Puerto Rico*, Ponce, Ed. Rev. Der. Pur., 1999, págs. 20 y 24.

Para cumplir con estos propósitos, la Asamblea Legislativa especificó en la Sección 1-103 de la Ley Núm. 208-1995, 19 LPRA sec. 404, que la Ley de Transacciones Comerciales prevalece sobre los principios generales del Derecho. Así, esta ley especial reconoce como fuente normativa supletoria los principios generales de derecho,

---

[17] Sobre la historia de la legislación cambiaria en Puerto Rico y la adopción de la Ley de Transacciones Comerciales, *supra*, véase *COSSEC* et al. *v. González López* et al., 179 DPR 793, 800-801 (2010). El funcionamiento correcto del Código Uniforme de Comercio requiere de la uniformidad entre los estados. 19 LPRA sec. 401; Comentario 1 UCC sec. 9-701. El texto inglés prevalece sobre el español en caso de discrepancias entre ambos. M.R. Garay Auban, *Derecho cambiario de Estados Unidos y Puerto Rico*, Ponce, Ed. Rev. Der. Pur., 1999, pág. 24.

entre ellos las normas del Código de Comercio y el Derecho Civil. Esto es cónsono con el principio general de hermenéutica que establece que una ley de carácter especial que rige una materia prevalece sobre una de carácter general. Art. 12 del Código Civil, 31 LPRA sec. 12. Sin embargo, hemos recalcado que el propósito uniformador y demás principios de la Ley de Transacciones Comerciales deben regir la resolución de controversias a pesar de que los principios generales del Derecho pudieran aplicar a una controversia particular. *Cruz Consulting v. El Legado* et al., *supra*, pág. 509; *COSSEC* et al. *v. González López* et al., supra, pág. 811. Véase, Garay Auban, *op. cit.*, pág. 28. Por lo tanto, y conforme a nuestras expresiones previas, para resolver una controversia al amparo de la Ley de Transacciones Comerciales, *supra*, primeramente debemos acudir a las disposiciones de la propia ley. Solo cuando la Ley de Transacciones Comerciales, el Código Uniforme de Comercio o la jurisprudencia de otras jurisdicciones no permite disponer de la controversia, es que acudimos a los principios generales del Derecho y al Código Civil de manera supletoria. *Cruz Consulting v. El Legado* et al., *supra*; *COSSEC* et al. *v. González López* et al., supra. Procedemos a examinar las disposiciones pertinentes de la Ley de Transacciones Comerciales, *supra*.

La Ley de Transacciones Comerciales se divide en diez (10) capítulos.[18] De particular pertinencia al caso de autos son las disposiciones del Capítulo 2 que incorporan en Puerto Rico los preceptos del Artículo 3 del Código Uniforme de Comercio. Estas regulan la negociación, cesión, endoso, ejecución y otros aspectos de los instrumentos negociables, es decir, de aquellos documentos de crédito que plasman el derecho a cobrar una suma de dinero y a los que nuestro ordenamiento jurídico les otorga una facilidad de circulación especial. *Des. Caribe v. Ven-Lour Enterprises*, 198 DPR 290, 297 (2017); *Cruz Consulting v. El Legado* et al., *supra*, págs. 509-510; *COSSEC* et al. *v. González López* et al., supra, pág. 799; Garay Aubán, *op. cit.*, pág. 1. Específicamente, un instrumento negociable es:

> una promesa o una orden incondicional de pago de una cantidad específica de dinero, con o sin intereses u otros cargos descritos en la promesa u orden, si el mismo:
>
> (1) Es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor;
>
> (2) es pagadero a la presentación o en una fecha específica, y
>
> (3) no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero.[19] Sec. 2-104 de la Ley 208-1995(19 LPRA sec. 504(a)(1)-(3).

---

[18] Sobre la numeración de los capítulos de la Ley de Transacciones Comerciales, véase *COSSEC* et al. *v. González López* et al., *supra*, pág. 801 n. 2.

[19] *Des. Caribe v. Ven-Lour Enterprises*, 198 DPR 290, 298-299 (2017)("[L]a promesa de pago puede contener un compromiso adicional de dar colateral para garantizar el pago sin que esto afecte la negociabilidad del instrumento. 19 LPRA Sec. 504(a)(3)(A). Por lo tanto, un pagaré garantizado por una hipoteca puede ser un instrumento negociable porque el compromiso de ofrecer como colateral la hipoteca para garantizar el pago no afecta su negociabilidad").

Entre los instrumentos negociables más utilizados están las letras de cambio o giros, los cheques y los pagarés.[20] *Cruz Consulting v. El Legado* et al., *supra*, pág. 510; *COSSEC* et al*. v. González López* et al., supra, pág. 799. Estos instrumentos negociables cumplen una importante función en las relaciones económicas modernas. *Des. Caribe v. Ven-Lour Enterprises*, supra, pág. 298; Garay Auban, *op. cit.*, pág. 17. Se caracterizan por su idoneidad para el tráfico comercial, especialmente, por su negociabilidad y liquidez. *Des. Caribe v. Ven-Lour Enterprises*, supra. Como regla general, para su negociación basta la cesión de la posesión del instrumento y su endoso por el tenedor, o solamente la cesión de la posesión cuando el instrumento fuera pagadero al portador. Sec. 2-201 de la Ley Núm. 208-1995, 19 LPRA sec. 551. Además, la Ley le confiere al cesionario cualquier derecho del cedente a exigir el cumplimiento del instrumento. Sec. 2-203 de la Ley Núm. 208-1995, 19 LPRA sec. 553.

Asimismo, los instrumentos negociables se ven afectados por el principio de literalidad del Derecho cambiario. Como hemos señalado, "una persona que está en posesión de un instrumento negociable 'tiene derecho a descansar en que el derecho incorporado al instrumento es precisamente lo que está escrito en el instrumento'". *Cruz Consulting v. El*

---

[20] "Un instrumento es un 'pagaré' si es una promesa y es un 'giro' si es una orden". 19 LPRA sec. 504(e). Asimismo, una promesa "[s]ignifica un compromiso escrito de pagar dinero suscrito por la persona que se obliga a pagar". 19 LPRA sec. 503 (a)(9). Véase además, *Cruz Consulting v. El Legado* et al., 191 DPR 499 (2014).

*Legado* et al., *supra*, pág. 512, citando a Garay Auban, *op. cit*. Así, "el comprador de un instrumento negociable solamente necesita verificar el contenido del instrumento mismo para cerciorar la autoridad del vendedor para transferirlo sin tener que preocuparse por restricciones u obligaciones exógenas. Consecuentemente, de ordinario un comprador de un instrumento negociable no enfrentaría problema alguno si quisiera intercambiarlo por dinero en efectivo". *Des. Caribe v. Ven-Lour Enterprises*, supra, pág. 298. Por ello, los hemos comparado con un "mensajero sin bagaje".[21] Id.

Por lo tanto, tras identificar que un pagaré es un instrumento negociable, la negociación, cesión, endoso y ejecución de este se rige por la Ley de Transacciones Comerciales, *supra*. Como hemos señalado, esta Ley le confiere al cesionario cualquier derecho del cedente a exigir el cumplimiento del instrumento libre de restricciones u obligaciones exógenas. Por lo tanto, permitir que el deudor oponga la aplicación del retracto de crédito litigioso contra el nuevo adquirente de un instrumento negociable le impondría a este último restricciones no establecidas en el mismo y en total conflicto con el principio de negociabilidad y los propósitos de uniformar, simplificar y modernizar el derecho cambiario puertorriqueño que llevaron a la Asamblea Legislativa a promulgar la Ley de Transacciones Comerciales

---

[21] Véase esc. 8 sobre pagaré garantizado por una hipoteca y su efecto sobre la negociabilidad.

y sus enmiendas. Puesto que el propósito uniformador de la Ley de Transacciones Comerciales, *supra*, rige la resolución de controversias sobre los principios generales del Derecho, el Artículo 1425 del Código Civil, *supra*, no aplica a las transacciones regidas por esta ley como las del caso de autos.

Por su parte, la Opinión Mayoritaria utiliza primeramente las disposiciones del Código Civil y la Ley del Registro de la Propiedad Inmobiliaria, 30 LPRA Sec. 6001 *et seq.*, para sostener que la figura del retracto de crédito litigioso no aplica sobre las cesiones de instrumentos negociables al amparo de la Ley de Transacciones Comerciales, *supra*.[22] Al hacerlo invierte el orden de las fuentes de Derecho, pues no cabe duda de que la Ley de Transacciones Comerciales es la ley especial que debe ser en principio examinada y esta nos permite disponer de la controversia.

Así , la Opinión Mayoritaria recurre en última instancia al Capítulo 9 de la Ley de Transacciones Comerciales, *infra*,—"vigente al momento de los hechos del presente caso,[que] establecía que las disposiciones del Código Civil relacionadas a la 'transmisión de créditos no aplicarán a las transacciones regidas por [esta **Ley**]'".[23] Concluye que "[e]n consecuencia, a toda transacción que esté bajo el alcance de la Ley de Transacciones Comerciales

---

[22] La Ley 210-2015, según enmendada, conocida como Ley del Registro de la Propiedad Inmobiliaria, 30 LPRA Sec. 6001 *et seq.*, fue adoptada el 8 de diciembre de 2015 y entró en vigor noventa (90) días después de su aprobación.

[23] 19 LPRA sec. 2402(c).

previo a las enmiendas de la Ley Núm. 21-2012, como la de esta controversia, no le serán aplicables las disposiciones del Código Civil relacionadas a la cesión de créditos. Ello incluye, claro está, la cesión de créditos litigiosos y, en consecuencia, el retracto de los mismos".[24] Además, comenta "a modo persuasivo", que el nuevo Capítulo 9, infra, tiene una disposición similar.

Cabe señalar que el Capítulo 9 de la Ley de Transacciones Comerciales, *supra*, regula las transacciones garantizadas y la creación de gravámenes mobiliarios. Este fue adoptado mediante la Ley Núm. 241-1996 que enmendó la Ley de Transacciones Comerciales, *supra*. Sin embargo, con la promulgación de la Ley Núm. 21-2012, el antiguo Capítulo 9 fue reemplazado por un nuevo Capítulo de igual numeración con el objetivo de atemperar nuestra legislación a los estándares del Artículo 9 Revisado del Código Uniforme de Comercio. El nuevo Capítulo 9 entró en vigor el 17 de enero de 2013.

En lo pertinente, este aplica a "toda transacción independientemente de su forma, que crea por medio de un contrato una garantía mobiliaria sobre propiedad mueble o inmueble por su destino", y a "una venta de cuentas, papel financiero, pago intangible, o pagarés". Art. 9-109(a)(1) y (3), 19 LPRA Sec. 2219(a)(1) y (3).[25] Como se puede observar,

---

[24] Ponencia, pág. 20. (Énfasis omitido).
[25] Además, el Capítulo 9 define "garantía mobiliaria" como "un derecho real sobre propiedad mueble o inmueble por su destino que garantiza el pago o cumplimiento de una obligación. El término también incluye el derecho de un consignador y un comprador de cuentas, papel financiero, un pago intangible o un pagaré en una transacción que está sujeto a las

el nuevo Capítulo 9 además de regular transacciones garantizadas como las que examináramos en *Des. Caribe v. Ven-Lour Enterprises*, supra, desde el 17 de enero de 2013 también incluye la venta de pagarés.[26]

Además, el Capítulo 9 incluye una disposición no uniforme, la Sección 9-109(e), 19 LPRA Sec. 2219(e), que expresa que: "[l]as disposiciones del Código Civil de Puerto Rico respecto a la prenda y respecto a la transmisión de créditos no aplicarán a las transacciones regidas por este **Capítulo**".[27] Las razones para este cambio en el alcance de la ley no surgen expresamente, pero los efectos del propósito uniformador siguen siendo los mismos tanto antes como después de la promulgación de la Ley Núm. 21-2012.

Por los fundamentos expresados, concurro con la Opinión Mayoritaria respecto a que a la venta de un pagaré hipotecario que cumple con los requisitos de instrumento negociable de la Ley de Transacciones Comerciales, supra, no le es oponible la figura del retracto de crédito litigioso dispuesta en el Art. 1425 del Código Civil, *supra*. Sin embargo, por tratarse la Ley de Transacciones Comerciales de una ley especial, sus disposiciones deben prevalecer sobre las dispuestas en el Código Civil y el análisis correspondiente debe hacerse bajo estos estándares. De esta

---

disposiciones del capítulo 9". Sección 1-201(37) de la Ley Núm. 208-1995, supra, 19 LPRA Sec. 451(37). Esta definición responde al Capítulo 9 según adoptado por la Ley 21-2012, *supra*, pues **el antiguo Capítulo 9 limitaba la definición de garantía mobiliaria al derecho de un comprador de "cuentas" o "papel financiero"**. Véase además, 19 LPRA sec. 2402(c).
[26] Sección 9-109(a)(3), 19 LPRA sec. 2219 (a)(3). A su vez, el Capítulo 9 define los términos "pagaré" e "instrumento". Sección 9-102(a)(47) y(65), 19 LPRA sec. 2212(a)(47) y (65).
[27] (Énfasis suplido).

forma se cumple con la intención de la Asamblea Legislativa de uniformar y adelantar el tráfico de instrumentos y garantías según las prácticas comerciales actuales a través de la Ley de Transacciones Comerciales, *supra*, desde su promulgación.


Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

DLJ Mortgage Capital, Inc.

     Recurrido

       v.

David Santiago Martínez,
Diana Ortiz Borges y la
Sociedad Legal de
Gananciales Compuesta por
ambos

     Peticionarios

CC-2017-0521      *Certiorari*

La Jueza Presidenta Oronoz Rodríguez emitió una Opinión disidente a la cual se unió el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 23 de julio de 2019.

La Opinión que emite una Mayoría del Tribunal elimina *de facto* la disponibilidad de una de las herramientas más valiosas para el deudor hipotecario: el retracto de crédito litigioso. Tras un análisis descontextualizado y, en mi opinión, incorrecto, la Mayoría concluye que el retracto no se puede ejercer **luego** de una cesión de un instrumento negociable que se realizó al amparo de la Ley de Transacciones Comerciales, <u>infra</u>. Ello, **en ausencia de disposición expresa o intención legislativa a esos efectos.** Tal conclusión es preocupante debido a que: (1) la controversia que hoy atendemos no fue objeto de una

vista oral,[28] (2) los hechos del caso no son apropiados para para pautar la norma que adopta la Mayoría[29] y (3) las opiniones múltiples que generó este caso revelan la ausencia de una base sólida en Derecho que justifique una determinación tan adversa para miles de personas que enfrentan procedimientos de cobro y ejecución de hipoteca. Por entender que ninguno de los fundamentos provistos en la Opinión mayoritaria y la Opinión de Conformidad adjudica correctamente la controversia de autos, disiento.

I

Una Mayoría de este Tribunal fundamenta su determinación, principalmente, en la Sección 9-102 de la Ley de Transacciones Comerciales (LTC) -aplicable al momento de los hechos-, 19 LPRA sec. 2002 (derogada)[30] y el Artículo 1417a del Código Civil, 31 LPRA sec. 3942a. La Sección 9-102 de la LTC establecía, al igual que la sección vigente, que las disposiciones del Código Civil

---

[28] Ello hubiese sido útil en vista de que este caso incluía las controversias siguientes: 1) ¿cuándo comienza el término de caducidad de 9 días? 2) ¿qué se debe entender respecto a que la controversia debe girar sobre la *existencia misma* del crédito? 3) ¿aplica el retracto luego de una cesión producto de una venta a granel de créditos? y 4) ¿aplica luego de una cesión al amparo de la Ley de Transacciones Comerciales?

[29] Cabe señalar que el Capítulo 9 de la Ley de Transacciones Comerciales vigente, 19 LPRA secs. 2211-2409, no aplica al caso de autos. Por tal razón, la Opinión mayoritaria cita y discute varias disposiciones del Capítulo 9 actual "de modo persuasivo" cuando en realidad el análisis de la Opinión no aplica solamente al capítulo **ya derogado**, sino que también aplica a toda cesión de un instrumento negociable al amparo del Capítulo 9 **vigente** de la Ley de Transacciones Comerciales (debido a que la disposición que alegadamente aplica permaneció inalterada). Además, cabe resaltar que ninguno de los foros recurridos interpretó la Ley de Transacciones Comerciales para resolver las controversias que tenía ante sí. En particular, los foros recurridos evaluaron **si los deudores ejercieron su derecho al retracto oportunamente, dentro del término de caducidad de nueve (9) días, en consideración a dos comunicaciones que recibieron de parte de la cesionaria.** De hecho, los señalamientos de error **ante este Tribunal** giran en torno al descubrimiento de una carta que recibió uno de los deudores, la cual no se anejó a la solicitud de retracto.

[30] Actualmente, la Sección 9-109, 19 LPRA sec. 2219 (e).

respecto a la prenda y la transmisión de créditos no aplicarán a las transacciones que se rigen por el Capítulo 9. Tanto el capítulo vigente al momento de los hechos, como el actual, regulan las "transacciones garantizadas". Ello incluye la validez, constitución, perfección y prioridad de garantías mobiliarias, así como la venta o cesión de pagarés. Tras citar la Sección 9-102, supra, y sin mayor esfuerzo, la Opinión mayoritaria indica que

> [e]n consecuencia, a toda transacción que esté bajo el alcance de la Ley de Transacciones Comerciales previo a las enmiendas de la Ley Núm. 21-2012, como la de esta controversia, **no le serán aplicables las disposiciones del Código Civil relacionadas a la cesión de créditos. Ello incluye, claro está, la cesión de créditos litigiosos y, en consecuencia, el retracto de los mismos.**[31]

Al parecer, la Mayoría considera -erróneamente- que el *retracto* está comprendido dentro de la *cesión*, cuando en realidad se trata de dos eventos **distintos, independientes y separados en tiempo**. La *cesión* de crédito es el "negocio jurídico celebrado por el acreedor cedente con otra persona, cesionario por virtud del cual aquél transmite a éste la titularidad del derecho de crédito cedido". IBEC v. Banco Comercial, 117 DPR 371, 376 (1986). Constituye la "operación en virtud de la cual un tercero, sustituyendo al acreedor se convierte en el titular activo de una obligación". Íd. Para que la cesión tenga validez, "tiene que existir un crédito transmisible fundado en un título válido y eficaz". Íd., págs.

---

[31] Opinión mayoritaria, pág. 20 (énfasis suplido).

376-377. De lo anterior, es evidente que la cesión culmina cuando el cesionario obtiene el título del crédito cedido y se coloca en la posición del acreedor cedente. Hasta ese momento aplica la LTC, en exclusión del Código Civil. Cualquier evento, negocio o transacción posterior es independiente de la cesión y escapa el alcance de la LTC que le pretende dar la Mayoría.

En palabras de este Tribunal, "**[u]na vez se cede** el crédito litigioso, o se vende como afirma el Art. 1425 del Código Civil (…), **el deudor tiene derecho a extinguirlo** mediante el pago al cesionario del precio que éste realmente pagó, las costas y los intereses". <u>Consejo de Titulares v. CRUV</u>, 132 DPR 707, 726 (1993). Aunque en esa ocasión también expresamos que la doctrina conceptualiza el derecho como una restricción a la cesión, en efecto práctico y real no lo es. El retracto no existe como derecho si la cesión no se ha concretizado primero. El deudor únicamente puede ejercer su derecho a retracto **después** de la cesión. El retracto solo está disponible como alternativa para el deudor **luego de la cesión, por lo que no prohíbe, restringe ni limita** que, en efecto, ocurra el negocio jurídico de la cesión o venta. Por tanto, las disposiciones del Código Civil sobre el retracto de crédito litigioso atienden un asunto **posterior** a la cesión o venta del crédito. Es decir, la transmisión ya ocurrió, el crédito se cedió y hasta ahí llega el alcance de la LTC. En fin, las disposiciones de la LTC respecto a la cesión o venta de créditos (en este caso pagarés) y los artículos del Código Civil que permiten el retracto del crédito

litigioso no son mutuamente excluyentes, pues atienden dos etapas y actos distintos.

En atención a lo anterior, es meritorio señalar que la LTC no se ha enmendado para disponer la inaplicabilidad del retracto de crédito litigioso.[32] Tampoco se ha enmendado el Artículo 1426 del Código Civil que establece las tres circunstancias en las cuales se exceptúa el derecho al retracto: (1) cuando la venta o cesión se hace a un coheredero o codueño del derecho cedido; (2) a un acreedor en pago de su crédito; y (3) al poseedor de una finca sujeta al derecho litigioso que se ceda. 31 LPRA sec. 3951. Incluso, cabe señalar que el Sustitutivo de la Cámara de la P. de la C. 1654 -que constituye el proyecto para establecer un nuevo Código Civil- no solo mantiene el derecho al retracto de crédito litigioso, sino que **extiende** el término de caducidad para ejercerlo a 30 días.[33] Ello demuestra la intención clara de reconocer y validar el retracto y hacer más viable su ejercicio. El código propuesto también mantiene las excepciones al ejercicio del retracto inalteradas.[34]

Por otro lado, la Opinión mayoritaria acude al Artículo 1417a del Código Civil, supra, para sostener que el propio

---

[32] Previo a la adopción del Capítulo 9 del UCC, la LTC se enmendó mediante la: Ley Núm. 176-1996, Ley Núm. 241-1996, Ley Núm. 214-1997, Ley Núm. 96-2009, Ley Núm. 171-2010 y la Ley Núm. 239-2010. El Capítulo 9 vigente se adoptó mediante la Ley Núm. 21-2012 que incorporó disposiciones del Universal Commercial Code (UCC). Posteriormente, el Capítulo 9 se enmendó mediante la Ley Núm. 17-2014 a los fines de aclarar el periodo de vigencia de una declaración de financiamiento y proveer una extensión de las reglas de transición.

[33] Artículo 1244 propuesto. Sustitutivo del P. de la C. 1654 de 30 de enero de 2019, 5ta. Sesión Ordinaria, 18va Asamblea Legislativa, pág. 411.

[34] Íd.; Artículo 1245 propuesto.

código limita la aplicabilidad del retracto de crédito litigioso. El artículo dispone lo siguiente:

> En el caso de la cesión de una cosa litigiosa, la acción ejercitada por el cesionario es **sin perjuicio de cualquiera reclamación en contrario**, o de otro derecho existente al tiempo de notificarse la cesión, o antes; **pero esto no es aplicable a la cesión de un documento negociable, <u>traspasado de buena fe</u>, y por valor recibido, <u>antes de su vencimiento</u>**.

La Opinión mayoritaria, nuevamente mediante un análisis llano, concluye que "cuando la cesión de cosa litigiosa trate de un instrumento negociable serán inaplicables las disposiciones sobre la figura de retracto de crédito litigioso".[35] Tal análisis se centra en el texto "documento negociable" e ignora por completo los cualificativos que le siguen "**traspasado de buena fe**, y por valor recibido, **antes de su vencimiento**". ¿Qué constituye un documento o instrumento negociable *traspasado de buena fe* y *antes de su vencimiento*? Un examen de la totalidad de la disposición citada demuestra que el Artículo 1417a no sostiene la conclusión a la que llega hoy una Mayoría del Tribunal.

El Código Civil no define lo que es un instrumento negociable. Para ello, naturalmente, corresponde acudir a la Ley

---

[35] Opinión mayoritaria, pág. 13. Igual postura se sostiene en la Opinión de Conformidad de la Juez Asociada señora Rodríguez Rodríguez, a la cual se unieron los Jueces Asociados señores Martínez Torres y Rivera García. Opinión de Conformidad, págs. 4-5.

de Transacciones Comerciales, 19 LPRA sec. 401 et seq. La

Sección 2-108 define un instrumento negociable como:

> … una promesa incondicional de pagar una suma de dinero, pagaderos a la presentación o en fecha determinada, que no contiene ninguna otra promesa un orden, si el mismo:
>
> (1)    Es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor;
> (2)    es pagadero a la presentación o en una fecha específica,[36] y
> (3)    no especifica otro compromiso o instrucción por parte de la persona que promete un ordena el pago que no sea el pago del dinero (…). 19 LPRA sec. 504 (a).

El tipo de pagaré determina cuándo se entiende que el

instrumento está vencido y ello, a su vez, incide sobre la

clasificación del tenedor como uno de buena o mala fe. El

vencimiento es "la terminación del plazo establecido legal o

convencionalmente para el cumplimiento de una obligación". Íd.,

pág. 666. Cuando un instrumento con **fecha específica vence, el

instrumento entrará en <u>mora</u> el día después de la fecha de

vencimiento.** Soto Solá v. Registradora, 189 DPR 653, 667 (2013)

(énfasis suplido). Un instrumento pagadero en fecha específica,

sujeto a derecho de aceleración, "entra en mora al día siguiente

de la fecha de vencimiento acelerada". Sec. 2-108, 19 LPRA sec.

508. Cuando un pagaré **vencido** se negocia, "**<u>no podrá considerarse

al nuevo tenedor como tenedor de buena fe</u>, ya que se presume que

una persona debe sospechar de un documento que se desea negociar**

---

[36] El pagaré objeto de la controversia tenía fecha de vencimiento el **1 de diciembre de 2035**, pero disponía que el incumplimiento con los términos provocaría el **aceleramiento** de la deuda y, por tanto, su **vencimiento**.

**aunque esté vencido"**. <u>Soto Solá v. Registrador</u>, <u>supra</u>, pág. 667 (énfasis suplido). Igualmente, la LTC define a un tenedor de buena fe como aquel que toma el instrumento por valor, de buena fe, **sin tener aviso de que el instrumento estuviese en mora**. Sec. 2-302, 19 LPRA sec. 602. Además, en contraste con lo que hoy resuelve la Mayoría, la LTC dispone que

> [u]na persona que toma un instrumento, **que no sea una con derechos de tenedor de buena fe, está sujeta a una reclamación** de derecho de propiedad o de posesión sobre el instrumento o su producto, **incluyendo una reclamación para** rescindir una negociación y **recuperar el instrumento o su producto**. Una persona con derechos de un tenedor de buena fe toma el instrumento libre de reclamaciones sobre el mismo. Sec. 2-306, 19 LPRA sec. 606.

En el caso de referencia, CitiMortgage, predecesor de DLJ Mortgage, entabló la demanda de cobro de dinero y ejecución de hipoteca el 18 de septiembre de 2012. Alegó que los demandados incumplieron con su obligación de realizar pagos mensuales, que a la fecha adeudaban sobre un millón de dólares y que luego de varios intentos por cobrar lo adeudado "declaró líquida, **vencida** y exigible la referida deuda".[37] Posteriormente, luego de que los deudores presentaran su *Contestación a la Demanda*, DLJ Mortgage Capital presentó una moción de sustitución en la cual informó que adquirió el pagaré hipotecario en cuestión mediante endoso en blanco. El foro primario declaró con lugar la solicitud y permitió la sustitución. En vista de lo anterior, es evidente

---

[37] Opinión mayoritaria, págs. 2-3 (énfasis suplido).

que **no estamos ante un instrumento negociable traspasado de buena fe y, mucho menos, antes de su vencimiento.**

En un intento por fortalecer el análisis limitado de la Opinión mayoritaria, la Opinión de Conformidad añade otros fundamentos que tampoco sostienen la inaplicabilidad del retracto de crédito litigioso luego de una cesión al amparo de la LTC. Se indica que el Artículo 96 de la Ley del Registro de la Propiedad Inmobiliaria, 30 LPRA sec. 6133, "mandata que en los casos de ejecución de hipotecas que garantizan instrumentos negociables deberá darse cumplimiento a las disposiciones de la Ley de Transacciones Comerciales".[38] Ello no equivale en forma alguna a que el retracto de crédito litigioso no aplique **luego** de una cesión al amparo de la LTC, pues **nada en ese estatuto excluye la aplicación de la figura.**

Además, en la Opinión de Conformidad se esboza que la figura del retracto se contrapone a la "esencia propia" negociable del instrumento.[39] Se indica que la aplicabilidad del retracto debe limitarse a la cesión de un instrumento que no sea negociable. Incluso, se expone que

> [e]xigir que en cada ocasión que se negocie un instrumento negociable que garantice una hipoteca haya que notificar al cedido de esa transferencia para que éste decida -si el crédito está en litigio- si desea ejercer su derecho de retracto, es imponer una limitación, obligación o restricción exógena al instrumento.[40]

---

[38] Opinión de Conformidad, pág. 6.
[39] Íd., págs. 6-9.
[40] Íd., págs. 7-8.

El retracto **en nada** limita el ejercicio de la cesión del crédito. Este es independiente a la cesión, solo está disponible luego de que esta ocurre y es una herramienta que tiene el deudor para liberarse de su obligación cumpliendo unos requisitos muy específicos. Además, la idea de que el cesionario tiene que notificar la cesión al deudor debido a la existencia del retracto en nuestro ordenamiento es incorrecta. **La obligación de notificar la cesión es una exigencia de leyes y reglamentos federales.** En particular, el Truth in Lending Act, 15 USC sec. 1641 (g)(1), dispone lo siguiente:

> In addition to other disclosures required by this subchapter, **not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party,** the creditor that is **the new owner or assignee** of the debt **shall notify the borrower in writing of such transfer,** including—
> (A) the identity, address, telephone number of the new creditor;
> (B) the date of transfer;
> (C) how to reach an agent or party having authority to act on behalf of the new creditor;
> (D) the location of the place where transfer of ownership of the debt is recorded; and
> (E) any other relevant information regarding the new creditor.

Similarmente, el Real Estate Settlement Procedures Act (RESPA) exige varias notificaciones antes y después de la venta de un "federally related mortgage loan". 12 USC sec. 2605. Así, es evidente que **la notificación de la venta o cesión del crédito no es una exigencia de nuestro ordenamiento y, mucho menos, está relacionada al retracto de crédito litigioso.** Esta notificación, no niega ni contradice el carácter negociable de los

instrumentos y no opera como una limitación al tráfico comercial.

Por último, se arguye que el retracto de crédito litigioso es inaplicable a las ventas de créditos en bloque porque "no existe un precio de venta del crédito", sino un precio por el volumen.[41] Tal conclusión ignora el carácter complejo y técnico de las ventas de carteras de préstamos. Se sugiere que la venta conlleva, simplemente, pagar un precio determinado por una cantidad de créditos. En cambio, detrás de cada venta de cartera de préstamos hay un intercambio detallado y minucioso de información entre el vendedor y el comprador de los créditos. Las carteras de préstamos incluyen créditos vencidos y no vencidos, atrasos cortos o más extensos, préstamos grandes o pequeños, cada uno con un valor particular y una probabilidad distinta de recobro. A base de la información compartida entre las entidades, mediante documentos como *Loan Schedules* o memorandos de inversión, se calculan las sumas que se esperan recobrar de cada préstamo, la posibilidad de recobro, entre otros asuntos. Como parte de las negociaciones y de ese intercambio de información, se fija un valor que puede ser numérico o porcentual (ej. 60 centavos el dólar o 30 centavos el dólar), por lo que sí hay una cifra disponible que se puede informar en caso de que el deudor desee ejercer su derecho al retracto de crédito litigioso.

---

[41] Íd., págs. 10-11.

II

Además de estar en desacuerdo con los fundamentos provistos para intentar sustentar la determinación que toma la Mayoría, considero pertinente resaltar ciertos hechos particulares que hacían que este caso fuera uno inadecuado para pautar la norma que se adoptó. Los peticionarios recurren de **dos resoluciones** del Tribunal de Apelaciones en el caso de referencia. En la primera, objeto del KLCE201700273 y atendida en la Opinión mayoritaria, el Tribunal de Primera Instancia denegó una solicitud para ejercer el retracto de crédito litigioso. En la segunda, objeto del KLCE201700884, el foro primario denegó una moción de relevo de la orden que denegó el retracto. Los peticionarios arguyeron que DLJ Mortgage incurrió en falsa representación y fraude por omitir que la primera vez que requirió el pago a los demandados, luego de la cesión, fue mediante una carta del **3 de marzo de 2016** y no la carta que presentaron al tribunal con fecha del **11 de abril de 2016.** Indicaron que recién habían advenido en conocimiento de que la codemandada Diana Ortiz Borges recibió -en marzo- una comunicación titulada *Notification of Assignment, Sale or Transfer of Your Mortgage Loan*, en la cual se le informó que se había transferido el préstamo hipotecario a DLJ Mortgage, efectivo el 26 de febrero de 2016, pero se le advertía que los pagos debían remitirse a CitiMortgage, Inc.[42] Según la moción, la Sra. Ortiz Borges remitió inmediatamente la comunicación a su

---

[42] Apéndice, págs. 159-160.

representante legal de aquel entonces quien olvidó anejarla a la *Moción en solicitud de información para ejercer el retracto de crédito litigioso y notificación de ejercicio* que se presentó el **11 de marzo de 2016** (dentro del periodo de 9 días). Los demandados cambiaron de representación legal y recibieron la carta de su abogado anterior el 14 de febrero de 2017. Así las cosas, presentaron la moción de relevo el 17 de febrero de 2017.

La controversia central del caso giró en torno a las dos comunicaciones, si el retracto se solicitó oportunamente y si DLJ Mortgage incurrió en fraude y falsa representación al omitir que, en realidad, notificó la cesión el 3 de marzo y no el 11 de abril (lo que haría el reclamo de los deudores oportuno). En vez de aprovechar la oportunidad para aclarar cuándo comienza el término de 9 días para ejercer el retracto de crédito litigioso y si, en este caso, el foro primario erró al denegar tanto el retracto como la moción de relevo; el Tribunal se embarcó en una controversia compleja, en ausencia de vista oral y de un consenso sobre el derecho aplicable, para determinar que el retracto no aplica luego de una cesión al amparo de la LTC. Ello, con el problema adicional de que el Capítulo 9 vigente no aplica a los hechos de este caso porque la demanda se entabló previo a su aprobación.

III

Por los fundamentos antes expuestos, considero que ninguno de los fundamentos esbozados atiende correctamente la

controversia de referencia y que este no era el caso apropiado para eliminar *de facto* el retracto de crédito litigioso. No puedo coincidir con el resultado al que llega la Mayoría, máxime cuando este tiene un impacto significativo en nuestro ordenamiento y en los miles de casos de cobro de dinero y ejecución de hipoteca que se ventilan en nuestros tribunales. Peor aún, se está eliminando un mecanismo beneficioso para los deudores sin fundamento válido en derecho.

Por todo lo anterior, disiento.


Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

DLJ Mortgage Capital, Inc.

  Recurrido

   v.

David Santiago Martínez,  CC-2017-0521  Certiorari
Diana Ortiz Borges y la
Sociedad Legal de
Gananciales compuesta
por ambos

  Peticionarios


Opinión disidente emitida por el Juez Asociado señor Kolthoff Caraballo a la cual se une la Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Estrella Martínez


San Juan, Puerto Rico, a 23 de julio de 2019.

Por considerar que eliminar una disposición expresa (retracto de crédito litigioso) a un deudor que busca pagar para extinguir su obligación y, a su vez, ponerle fin a un pleito no es cónsono con lo que dicta nuestro ordenamiento jurídico y, además, dista de la política pública dirigida a que las familias no pierdan su hogar, muy respetuosamente disiento. Veamos.

Este caso nos brindaba la oportunidad de determinar sobre la procedencia del ejercicio del retracto de crédito litigioso contemplada en el Art. 1425 del Código Civil, *infra*, ante la cesión

de un pagaré hipotecario en litigio. La Opinión mayoritaria concluye en la negativa. Respetuosamente entiendo que dicha conclusión no es correcta.

I

El caso de autos se originó cuando CitiMortgage, Inc. (CMI) presentó una demanda sobre cobro de dinero y ejecución de hipoteca en contra del Sr. David Santiago Martínez, la Sra. Diana Ortiz Borges y la Sociedad Legal de Bienes Gananciales compuesta por ambos (peticionarios). En resumen, CMI expuso que los peticionarios suscribieron un pagaré hipotecario a favor de Doral Financial Corporation o a su orden, por el principal de $1,220,000 y que posteriormente lo adquirió por valor recibido y por endoso en el curso ordinario de sus negocios. Además, alegó que los peticionarios incumplieron con el pago de varias mensualidades pactadas mediante el pagaré hipotecario, del cual se catalogó tenedor de buena fe. Por ésto, CMI solicitó al tribunal de instancia que declarara "con lugar" la demanda, condenara a los peticionarios a realizar el pago de la deuda y ordenara la venta del inmueble en pública subasta.

Por su parte, luego de contestar la demanda, los peticionarios presentaron una *Moción en solicitud de información para ejercer el retracto de crédito litigioso y notificación de ejercicio de derecho.* En la referida moción, los peticionarios alegaron que CMI cedió o planificaba ceder el pagaré hipotecario en cuestión, por lo

que solicitaron al foro de instancia que le ordenara a CMI confirmar y descubrir los pormenores de la cesión. Añadieron que pretendían ejercer el retracto de crédito litigioso. En respuesta, el tribunal de instancia declaró "no ha lugar" a la moción, tras concluir que era prematura debido a que no tenía ante su consideración ninguna moción de sustitución de parte.

Así las cosas, DLJ Mortgage Capital, Inc. (DLJ) presentó una *Moción informativa de sustitución de parte* mediante la que alegó ser el nuevo acreedor con derecho en la reclamación incoada, ya que el pagaré hipotecario objeto de la demanda le fue cedido por CMI. Evaluada la petición de DLJ, el foro de instancia autorizó la sustitución de parte y, además, le ordenó a que se expresara en cuanto a la moción sobre el retracto de crédito litigioso. Por su parte, los peticionarios presentaron, por segunda ocasión, una *Moción informativa y en solicitud de información para ejercer el retracto de crédito litigioso y notificación de ejercicio de derecho*. En específico, nuevamente solicitaron que se detallara el monto pagado en la cesión para poder ejercer el retracto de crédito litigioso. En respuesta, DLJ presentó una *Moción en oposición a la solicitud para ejercer el retracto del crédito litigioso*. En lo que nos concierne, DLJ señaló que el Art. 9-109 de la Ley de Transacciones Comerciales (LTC), 19 LPRA sec. 2219(e), excluye la aplicación de la figura del retracto de crédito

litigioso sobre cesiones de instrumentos negociables otorgados de conformidad con dicha ley.

Evaluados los planteamientos de ambas partes, el tribunal de instancia denegó la moción para ejercer el retracto de crédito litigioso, ello tras concluir que fue presentada de forma tardía, entiéndase luego del término de caducidad de 9 días. Esto, debido a que tomó como punto de partida para activar el término una carta extrajudicial enviada por DLJ a los peticionarios. Nótese que el foro de instancia no atendió el asunto de la alegada exclusión de la figura del retracto de crédito litigioso al amparo de la LTC.

En desacuerdo, los peticionarios acudieron ante el Tribunal de Apelaciones mediante un recurso de *certiorari* y, en síntesis, señalaron que el foro de instancia erró al determinar que su solicitud para ejercer el retracto de crédito litigioso caducó. No obstante, el Tribunal de Apelaciones denegó expedir el recurso de *certiorari.*

Insatisfechos, los peticionarios comparecen ante este Tribunal mediante una Petición de *Certiorari* y señalan que el Tribunal de Apelaciones erró al no expedir el recurso y, en consecuencia, validar que la solicitud para ejercer el retracto de crédito litigioso fue tardía.

**II**

A. La cesión de créditos

El Art. 1065 del Código Civil, 31 LPRA sec. 3029, establece que: "todos los derechos adquiridos en virtud de

una obligación son transmisibles con sujeción a las leyes, si no se hubiese pactado lo contrario". La cesión de crédito se define como "un negocio jurídico celebrado por el acreedor cedente con otra persona, cesionario, por virtud del cual aquél transmite a éste la titularidad del derecho del 'crédito cedido'".[43] Esto es, el cesionario adviene titular de los mismos derechos que ostentaba su cedente.[44] De esta forma, el tercero cesionario sustituye al acreedor original y se convierte en el titular activo de una obligación.[45] A partir de la transmisión del crédito, el cesionario se instala en la misma posición y relación obligatoria respecto al deudor.[46]

B. La cesión de créditos litigiosos

El crédito litigioso se define como aquel que está sujeto al litigio.[47] Es el que puesto en el pleito no puede tener realidad sin previa sentencia firme que lo declare. Es decir, que está en deuda, se disputa y los derechos son inciertos.[48] Se considera litigioso desde que se contesta la demanda. Como los créditos son susceptibles de ser

---

[43] IBEC v. Banco Comercial, 117 DPR 371, 376 (1986). Véase L. Díez-Picazo, Fundamentos del Derecho Civil Patrimonial, Madrid, Ed. Tecnos, 1979, Vol. 1, pág. 789.

[44] The Comm. Ins. Co. v. Cía de Fomento Ind., 123 DPR 150, 161 (1989).

[45] IBEC V. Banco Comercial, supra, pág. 377.

[46] Íd.

[47] Santana v. Quintana, 52 DPR 749, 753 (1938).

[48] Martínez Jr. v. Tribunal de Distrito, 72 DPR 207, 209 (1951).

transmitidos, los créditos litigiosos están al alcance de la negociación en el tráfico jurídico.[49]

Sin embargo, no se considera crédito litigioso cuando al verificarse la transferencia de este no se ha iniciado pleito alguno para cobrarlo.[50]

C. **La figura del retracto de crédito litigioso como limitación a la cesión de créditos litigiosos**

La figura del retracto de crédito litigioso se originó tras la aversión que producía la compra barata de créditos cuyo cobro se lograba mediante la molestia, gastos e incertidumbre de un proceso judicial. Así, la Ley Anastasiana dispuso que el cesionario de un crédito litigioso no pudiera percibir del deudor una suma superior a la que había pagado para adquirir el crédito del cedente.[51] Esto, con el fin de acabar con la práctica de "compradores profesionales de pleitos de créditos mal garantidos, los que se adquirían a bajísimo precio con el propósito de hostigar y perseguir implacablemente a los deudores… y hacer grandes ganancias".[52]

El objetivo esencial que se persigue no es tanto beneficiar a la persona que ejerce el retracto, sino

---

[49] Consejo de Titulares v. CRUV, 132 DPR 707, 718 (1993).

[50] Cámara Insular Comerciantes Mayoristas v. Anadón, 83 DPR 374, 386 (1961).

[51] J. Trías Monge, El envejecimiento de los Códigos: el caso del retracto de crédito litigioso, 64 Rev. Jur. UPR 449, 450-451 (1995).

[52] Íd.,pág. 450.

disminuir los litigios.[53] Es decir, lograr la conclusión de los pleitos.[54] Nótese que la consecuencia de índole procesal es que "se pondrá punto final al proceso que sobre la realidad o sustantividad del crédito se seguía entre cedente y deudor o entre éste y el cesionario, al desaparecer el objeto de la controversia".[55]

Además de fomentar la paz jurídica, la figura del retracto de crédito litigioso le provee al deudor una herramienta para liberarse de una deuda impugnada, la cual es vendida a un tercero. Es decir, este tipo de retracto -distinto a los retractos ordinarios- tiene un efecto de liberación para el deudor. Al respecto, el tratadista José Ramón Vélez Torres comenta que el retracto de crédito litigioso es el derecho de preferencia que tiene una persona para adquirir una cosa cuando el dueño la ha enajenado, subrogándose en el lugar del comprador mediante el abono a éste del precio pagado y de los gastos que se le pudieron ocasionar.[56]

Sin embargo, la figura del retracto de crédito litigioso no debe considerarse una limitación al derecho de disposición, adquisición y libre contratación.

---

[53] J.L. Navarro Pérez, _El retracto de créditos litigiosos_, Granada, Ed. Comares, 1989, pág. 64.

[54] J.L. Lacruz Berdejo y otros, _Elementos de derecho civil; Derecho de Obligaciones_, 5ta ed., Madrid, Ed. Dykinson, 2011, T.II, Vol.1, pág. 219.

[55] Íd.,pág. 139.

[56] J.R. Vélez Torres, _Curso de Derecho Civil: Los bienes, Los derechos reales_, Madrid, 1995, Tomo II, pág. 465.

Cónsono con lo anterior, el tratadista José Luis Navarro Pérez destaca lo siguiente:

> En efecto, el retracto no limita la libertad de disposición del cedente, ni invalida o hace ineficaz el negocio por el mismo concertado. Sin embargo, nosotros dudamos mucho de que el retracto del crédito litigioso suponga una limitación del derecho de adquisición del cesionario, o de la libre contratación del mismo. El cesionario puede adquirir el crédito y su adquisición será eficaz y válida, y en consecuencia también puede contratar libremente. Ambos derechos o facultades están íntimamente relacionadas, y en ambas la libertad del cesionario es total y sus actos plenamente válidos. Si el deudor ejercita el retracto que la Ley le concede lo hace también después de que el cesionario haya adquirido el derecho y contratado libremente sobre el mismo, luego tampoco puede hablarse de limitación del derecho de adquisición, ni de libre contratación del cesionario.[57]

El Art. 1425 del Código Civil, 31 LPRA sec. 3950, establece cómo opera la figura del retracto de crédito litigioso, a saber:

> Vendiéndose un crédito litigioso, el deudor **tendrá derecho a extinguirlo, reembolsando al cesionario el precio que pagó, las costas que se le hubiesen ocasionado y los intereses del precio desde el día en que éste fue satisfecho.**[58]

> Se tendrá por litigioso un crédito desde que se conteste a la demanda relativa al mismo.

> El deudor podrá usar de su derecho dentro de nueve (9) días, contados desde que el

---

[57] J.L. Navarro Pérez, op. cit., pág. 70.

[58] El ejercicio del retracto de crédito litigioso se hace mediante moción. Pereira v. IBEC, 95 DPR 28, 67 (1997).

cesionario le reclame el pago. (Énfasis nuestro).[59]

Por su parte, el Art. 1426 del Código Civil, 31 LPRA sec. 3951, establece los escenarios en los que el retracto de crédito litigioso no podrá ejercerse, a saber:

> Derechos del deudor a extinguir crédito litigioso-Excepciones
>
> Se exceptúan de lo dispuesto en la sección anterior la cesión o venta hecha:
> (1) A un coheredero o codueño del derecho cedido.
> (2) A un acreedor en pago de su crédito.
> (3) Al poseedor de una finca sujeta al derecho litigioso que se ceda.

En estos escenarios la cesión goza de una causa muy explicable y lícita, y no se descubre el propósito de especular o vejar al deudor.[60]

---

[59] Nótese que el término establecido por el Código Civil para ejercer el derecho de retracto es de caducidad. Pereira v. IBEC, 95 DPR 28, 667 (1967). Sobre ésto y en relación con el Art. 1.535 del Código Civil Español, del cual procede nuestro Art. 1425, el tratadista José María Manresa y Navarro expone que el punto de partida para contar el plazo breve de 9 días no está definido en el Código, pues en éste solo se hace referencia a "la reclamación del cesionario sin especificar si ésta ha de ser judicial o extrajudicial". Es decir, que sea cual fuere la forma en que se reclame, lo importante es que se reclame el pago del crédito y a partir de entonces se ha de contar el plazo. En relación con la reclamación judicial, el tratadista Manresa explica que esta se entiende por el mero hecho de personarse el cesionario en el litigio pendiente, solicitando que se incluya como parte legítima para continuar el pleito. Véase: J.M. Manresa y Navarro, Comentarios al Código Civil español, 6ta ed. Rev., Madrid, Ed. Reus, 1969, T. X, Vol. I, pág. 596.

Por su parte, el tratadista Lacruz Berdejo opina que cuando se trate de un crédito litigioso el plazo de caducidad para ejercer el retracto debe contarse desde que se haya concretado el traslado de la sucesión procesal de un acreedor a otro en la posición de demandante. J.L Lacruz Berdejo y otros, Elementos de derecho civil; Derecho de Obligaciones, 5ta ed. Rev., Madrid, Ed. Dykinson, 2011, T. II, Vol. I, pág. 219.

Destacamos que desde el 1906 este Tribunal resolvió que el término de 9 días comienza a trascurrir desde que se concrete la sustitución de parte. Martínez v. Santiago, 10 DPR 259, 263 (1906).

[60] Íd.,pág. 220.

D. <u>La figura del retracto de crédito litigioso en Luisiana</u>

Al igual que en Puerto Rico, el Código Civil del estado de Luisiana -de tradición civilista semejante a la nuestra- instituye la figura del retracto de crédito litigioso. En específico, dispone lo siguiente:

> When a litigious right is assigned, the debtor may extinguish his obligation by paying to the assignee the price the assignee paid for the assignment, with interest from the time of the assignment.
>
> A right is litigious, for that purpose, when it is contested in a suit already filed.
>
> Nevertheless, the debtor may not thus extinguish his obligation when the assignment has been made to a co-owner of the assigned right, or to a possessor of the thing subject to the litigious right.[61]

Ahora bien, el UCC de Luisiana contiene una disposición **específica** en la que excluye el mecanismo del retracto de crédito litigioso en ciertos escenarios, a saber:

> § 9-411. Judgments and litigious rights
>
> (a) Judicial mortgages. Law other than this Chapter governs the rights of third persons with respect to real property burdened by a judicial mortgage created by filing a judgment, including the effect of releases of the judicial mortgage by the mortgagee of record.
> (b) Enforcement. After notification, the secured party has the rights established under <u>R.S. 13:3864</u> through <u>13:3868</u>.
> **(c) Litigious rights. Civil Code Article 2652 shall not apply to the creation of a security interest in a litigious right or to the foreclosure or other sale in enforcement thereof.[62]**

---

[61] La. Civ. Code Ann. art. 2652 (2019).

[62] La. Stat. Ann. sec. 10:9-411 (2019).

E. La Ley de Transacciones Comerciales

Para el 1930 el Derecho Cambiario en Puerto Rico estaba regido por el Código de Comercio español de 1886, el cual reglamentaba los actos de comercio, los contratos mercantiles y los instrumentos negociables. "En defecto de disposiciones en el Código de Comercio o de *usos de comercio* aplicables regía el Código Civil de 1889 recodificado en 1930".[63] Posteriormente, adoptamos la Ley Uniforme de Instrumentos Negociables originada en el "*National Conference of Commissioners on Uniform State Laws*" e incorporada en todas las legislaciones estatales de los Estados Unidos.[64] No obstante, las lagunas y preceptos ambiguos de la Ley Uniforme de Instrumentos Negociables afectaron el propósito unificador de dicha ley. Por ello, a principios de la década de 1950 se redactó el Código Uniforme de Comercio (*Uniform Commercial Code* o UCC, por sus siglas en inglés).[65]

Posteriormente, la Legislatura aprobó la Ley de Instrumentos Negociables y Transacciones Bancarias (la que hoy conocemos como LTC). La LTC tiene como propósito: (1) simplificar, clarificar y modernizar el derecho que rige las transacciones comerciales; (2) permitir la

---

[63] M.R. Garay Aubán, Derecho Cambiario de Estados Unidos y Puerto Rico, 1ra ed., Ponce, Ed. Rev. Der. Puertorriqueño, 1999, pág. 19.

[64] Íd. Véase, además, St. Paul Fire & Marine v. Caguas Fed. Savs., 121 DPR 761, 767 (1988).

[65] M.R Garay Aubán, op. cit., págs. 19-20.

continua expansión de prácticas comerciales por medio de las costumbres, los usos y los acuerdos entre las partes; y (3) uniformar el derecho entre las diversas jurisdicciones.[66] Obsérvese que "el fin primordial de la LTC es uniformar la normativa sobre instrumentos negociables con la que rige en Estados Unidos, recogida en el UCC".[67]

En particular, la LTC dispone que "a menos que sean desplazados por disposiciones particulares de esta ley, los principios generales de derecho de esta jurisdicción aplicarán de modo supletorio".[68] "[E]stos principios generales de derecho incluyen de forma muy especial las normas del Código de Comercio que subsisten después de la aprobación de la LTC, y las normas del Derecho Civil".[69]

**III**

En primer lugar, debemos evaluar el siguiente precepto estatuido en el Capítulo 9 de la LTC mediante el cual la Opinión mayoritaria establece que la figura del retracto de crédito litigioso no aplica a una cesión de un pagaré hipotecario otorgado en virtud de la LTC, esto es: "[l]as disposiciones del Código Civil respecto a la prenda y respecto a la transmisión de créditos no aplicarán a las

---

[66] Sec. 1-102 de la Ley de Transacciones Comerciales, 19 LPRA sec. 401(2)(a)-(c).

[67] M.R Garay Aubán, op. cit., pág. 20.

[68] Sec. 1-103 de la Ley de Transacciones Comerciales, 19 LPRA sec. 402.

[69] M.R Garay Aubán, op. cit., pág. 28.

transacciones regidas por este capítulo".[70] Con ello en mente, debemos cuestionarnos qué transacciones se rigen por el Capítulo 9 de la LTC. En respuesta, el alcance del Capítulo 9 de la LTC va dirigido a "[u]na transacción, independientemente de su forma, que **crea** por medio de un contrato una garantía mobiliaria sobre propiedad mueble o inmueble por su destino […] y a "una **venta** de cuentas, papel financiero, pago intangible, o pagarés […]".[71] Vemos que las disposiciones del Capítulo 9 de la LTC rigen sobre el perfeccionamiento de las mencionadas transacciones. Es decir, sobre la constitución y validez del negocio jurídico en sí.

En el caso de autos, el pagaré hipotecario fue suscrito entre el banco originador y los peticionarios, y posteriormente fue cedido a DLJ acorde con la LTC y demás disposiciones aplicables. Es decir, el pagaré hipotecario y su posterior cesión fueron perfeccionados conforme a derecho. Realizado el negocio jurídico, automáticamente quedó transferido el derecho hipotecario.[72] Entiéndase que cuando se realizó la cesión del pagaré hipotecario también se transfirió la capacidad de ejecutar la hipoteca (inmueble). **Habiéndose perfeccionado válidamente el negocio jurídico, si el cesionario decide continuar con el litigio**

---

[70] Sec. 9-109 de la Ley de Transacciones Comerciales, 19 LPRA sec. 2219(e).

[71] Sec. 9-109 de la Ley de Transacciones Comerciales, *supra*. Véase, además, <u>Des. Caribe v. Ven-Lour Enterprises</u>, 198 DPR 290, 304 (2017).

[72] Íd.

**anteriormente entablado pasamos a otro escenario, a saber: el cobro de dinero y la ejecución de hipoteca.[73]**

Entiéndase que la transmisión de créditos entre dos entidades (cedente y cesionario) no afecta ni se relaciona al ejercicio posterior e independiente del mecanismo del retracto de crédito litigioso que eventualmente pudiera ejercer el deudor.

Así, la figura del retracto de crédito litigioso no afecta el carácter sustantivo de la legislación especial. El Capítulo 9 de la LTC no excluye el ejercicio de la figura del retracto de crédito litigioso.

Nótese, además, que el precepto que nos compete alude específicamente a la transmisión de créditos. No podemos equiparar lo anterior con la transmisión de un crédito litigioso. Ello, toda vez que la transmisión de créditos se da en el contexto de la propia naturaleza de los instrumentos, a saber: la negociabilidad. En esa práctica rutinaria no puede hablarse de la figura del retracto de crédito litigioso, pues ésta no emerge en ese contexto. Contrario a ello, cuando nos referimos a la transmisión de créditos litigiosos es entonces que nace el mecanismo del retracto de crédito litigioso. **Siendo así, la figura del retracto se circunscribe a la reclamación (litigio) y no a la prenda ni a su transmisión.** Esto debido a que esta figura opera en cuanto al crédito litigioso como

---

[73] Sépase que entre un cesionario y un deudor se puede llegar a concretar acuerdos, tales como el "*short sale*", "*short pay off*" modificación de hipoteca, entre otros.

tal y no es una disposición relacionada a la creación ni transmisión de créditos. Precisamente el derecho de retracto emerge cuando hay un litigio entablado, no antes ni después.[74]

Distinto a una trasmisión de un crédito en el curso ordinario de los negocios, estamos ante una cesión de un crédito litigioso en la cual el cesionario (nuevo acreedor) pretende cobrar el pago completo de una acreencia adquirida por una fracción de su precio. **En ese sentido, la validez de la transferencia no está en controversia, pues ya se perfeccionó.** Ahora bien, por disposición del Legislador nace el mecanismo del retracto de crédito litigioso para pagar y extinguir la deuda. Por ello, este asunto lo atiende el Código Civil a través del Art. 1425, *supra*.

No podría ser distinto, pues ya el pagaré hipotecario en cuestión fue perfeccionado y transmitido sin dificultad quedando solo el cobro de la deuda. A diferencia de Luisiana, en las secciones relativas al cobro y la ejecución del Capítulo 9 de la LTC nada se establece sobre alguna disposición que contemple, limite o prohíba el ejercicio del retracto de crédito litigioso. Por lo tanto, como la ley especial no contiene normas aplicables a esta situación particular, se debe acudir al Código Civil.[75]

---

[74] <u>Martínez v. Tribunal de Distrito</u>, 72 DPR 207, 209 (1951).

[75] <u>Mun. de San Juan v. Prof. Research</u>, 171 DPR 219, 236 (2007). Véase, además, Art. 12 del Código Civil, 31 LPRA sec. 12.

Por otro lado, resulta contradictorio que la Opinión mayoritaria parte de la premisa relativa a que "las disposiciones del Código Civil de Puerto Rico respecto a la prenda y a la transmisión de créditos no aplicarán a las transacciones regidas por este capítulo"[76], y luego aluda a que no procede el ejercicio del retracto de crédito litigioso, pues concluye que el Art. 1417a del Código Civil, 31 LPRA sec. 3942a, lo prohíbe.

El Art. 1417a del Código Civil, *supra*, establece lo siguiente:

> En el caso de la cesión de una cosa litigiosa, la acción ejercitada por el cesionario es sin perjuicio de cualquiera reclamación en contrario, o de otro derecho existente al tiempo de notificarse la cesión, o antes; pero esto no es aplicable a la cesión de un documento negociable, traspasado de buena fe, y por valor recibido, antes de su vencimiento.

Tras evaluar el Art. 1417a del Código Civil, *supra*, es notorio que éste regula sobre dos aspectos. El primero de éstos es una advertencia al cesionario dirigida a establecer que el deudor podrá oponerle reclamaciones u otro derecho existente al tiempo de notificarse la cesión o antes. El segundo aspecto, preceptúa que si la cesión litigiosa trata sobre documentos negociables no aplicará la anterior advertencia.

Nótese que el Art. 1417a no guarda relación con el Art. 1425 del Código Civil, *supra*, sobre retracto del

---

[76] Sec. 9-109 de la Ley de Transacciones Comerciales, *supra*.

crédito litigioso. Ello puesto que la figura del retracto de crédito litigioso tiene como propósito extinguir la obligación reclamada y, a su vez, ponerle fin a un pleito. Entiéndase que el retracto del crédito litigioso no opera como una defensa, reclamación o acción por resarcimiento ejercitada en contra del cesionario para liberarse de su obligación, tales como fraude y demás. Contrario a ello, el retracto de crédito litigioso es un mecanismo para pagar.

En la alternativa, aún si viéramos el mecanismo del retracto de crédito litigioso como una de las defensas a las cuales se refiere el Art. 1417a del Código Civil, *supra*, lo cual negamos, el propio artículo establece que las defensas no serán oponibles si el crédito fue cedido <u>antes de su vencimiento</u>. Acorde con lo anterior, los preceptos del derogado Art. 52 del Código de Enjuiciamiento Civil equivalente al hoy vigente Art. 1417a del Código Civil, *supra*, "son aplicables al pagaré en litigio, pero puesto que éste fue cedido después de su vencimiento, pueden alegarse contra el cesionario todas las defensas válidas que pudieran ser alegadas al cedente".[77]

Otro punto a favor de que el Art. 1417a del Código Civil, *supra*, bajo ningún concepto puede referirse al retracto de crédito litigioso como una de las defensas es que dicho artículo se refiere a las defensas oponibles al cedente. Es sabido que el retracto de crédito litigioso

---

[77] <u>Martínez, Ces. de Fajardo v. García</u>, *et al*, 18 DPR 733,738 (1912). Véase, además, <u>Cintrón v. Domínguez</u>, 60 DPR 477 (1942).

nunca podrá oponerse al originador del préstamo o al que transfiere su derecho porque, como mencionáramos, el ejercicio del mismo nace cuando se concreta la cesión.

En cualquiera de los razonamientos anteriores se descarta la aplicación del Art. 1417a del Código Civil, *supra*, para establecer que el retracto de crédito litigioso no procede. Ello, toda vez que es evidente que el retracto de crédito litigioso no es una defensa para liberarse del pago, el crédito que se pretende cobrar está vencido y esta figura nunca será oponible al cedente.

De otra parte, resaltamos que la Asamblea Legislativa dispuso expresamente en el Art. 1426 del Código Civil, *supra,* los escenarios en los cuales el retracto de crédito litigioso no podrá ejercerse. Es evidente que los hechos del caso de epígrafe no pueden ubicarse en ninguno de los escenarios exceptuados antes citados.

Antes esta Curia ha expresado que "[e]n la faena de interpretar las leyes es nuestra obligación 'armonizar, siempre que sea posible, todos aquellos estatutos involucrados en la solución de la controversia, de modo que se obtenga un resultado sensato, lógico y razonable' que represente y salvaguarde la efectividad de la intención legislativa".[78]

Como corolario de todo lo anterior, reitero mi validación a la figura del retracto de crédito litigioso,

---

[78] Fuentes Bonilla v. ELA, 200 DPR 364,389 (2018), citando a Mun. de Aguada y Aguadilla v. JCA, 190 DPR 122, 142 (2014).

pues es un mecanismo jurídico que permite extinguir la obligación reclamada y, a su vez, ponerle fin a un pleito. No se trata de evadir la deuda, sino de extinguirla mediante reembolso sin poner en desventaja al cesionario. Tampoco limita el derecho de disposición, adquisición ni libre contratación. Considerando que este mecanismo está vigente por disposición expresa del Legislador y su buen uso resulta en que las familias no pierdan su hogar, disiento.


                           Erick V. Kolthoff Caraballo
                           Juez Asociado